United States District Court
Southern District of Texas
**ENTERED**
August 21, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER DALE HAVENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00299 |
| | § | |
| BILL MILLS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff Christopher Dale Havens, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that his constitutional rights were violated in various respects in connection with his confinement as a pretrial detainee. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For purposes of screening and the reasons set forth below, the undersigned recommends that the Court:

- **DISMISS without prejudice** Plaintiff's claims against Head Nurse Heather, Corporal Cooper; Officer Sorteors, Officer Mendoza, Sergeant Lopez, Sergeant Tober, Corporal Roe, Officer Karen Alvarado, and John Doe, and against all other defendants in their official capacities;

- **DISMISS with prejudice** Plaintiff's § 1983 claims seeking criminal charges to be brought against those defendants who allegedly assaulted him;

1 / 56

- **RETAIN** Plaintiff's Fourteenth Amendment excessive force claims against Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea in their individual capacities;

- **RETAIN** Plaintiff's Fourteenth Amendment episodic claim regarding the denial of medical care on August 23, 2022 against Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea in their individual capacities; and

- **DISMISS with prejudice** Plaintiff's remaining § 1983 claims against Sheriff Bill Mills, Chief Deputy Gutierrez, Deputy Chief Armando Chapa, Lieutenant Hector Martinez, Lieutenant David, Sergeant Maddox, Sergeant Dugger, Corporal Fincher, Corporal Urhea, Sergeant Andride, and Officer Arisola in their individual capacities as frivolous or for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

The undersigned will order service separately on Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea with respect to the claims retained in this case.

### A. *Jurisdiction.*

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. Background.

#### 1. Plaintiff's § 1983 action.

Plaintiff is currently confined as a pretrial detainee at the Aransas County Detention Center ("ACDC") in Rockport, Texas.  Plaintiff's allegations in this case arise in connection with his current confinement at the ACDC.

Plaintiff named the following defendants in his original complaint: (1) Sheriff Bill Mills ("Sheriff Mills"); (2) Chief Deputy John Gutierrez ("Chief Gutierrez"); (3) Deputy Chief Armando Chapa ("Deputy Chapa"); (4) Lieutenant Hector Martinez ("Lieutenant Martinez"); (5) Sergeant Dugger; (6) Officer Arisola; (7) Corporal Urhea; (8) Sergeant Maddox; (9) Head Nurse Heather; (10) Corporal Cooper; (11) Officer Sorteors; (12) Officer Mendoza; (13) Corporal Fincher; (14) Sergeant Andride; (15) Sergeant Lopez; (16) Sergeant Tober; (17) Lieutenant David; (18) Corporal Roe; (19) Officer Karen Alvarado ("Officer Alvarado"); and (20) John Doe.  (Doc. No. 1, pp. 3, 6-7.)  Plaintiff filed a supplement to his original complaint, seeking to present additional claims and allegations against many of the same ACDC officials as well as new officials.  (Doc. No. 12.)

By Order entered on February 8, 2023, the undersigned found both the original complaint and supplement to be deficient because they impermissibly attempted to lodge claims against multiple defendants stemming from more than one transaction or occurrence.  (Doc. No. 13, p. 5.)  After striking both the original complaint and supplement from the record, the undersigned directed Plaintiff to file an amended complaint containing "only one claim (that is, one set of related facts and circumstances stemming from one incident or issue), unless the other claims alleged are all related to the same incident, issues, or actions of the defendant(s)."  *Id.* at 6.

### 2. *Plaintiff's amended complaint and more definite statement.*

On March 13, 2023, Plaintiff submitted an amended complaint, suing the following defendants in their individual and official capacities: Sheriff Mills, Chief Gutierrez, Deputy Chapa, Lieutenant Martinez, Lieutenant David, Sergeant Maddox, Sergeant Dugger, Corporal Fincher, Corporal Urhea, Sergeant Andride, and Officer Arisola (collectively "Defendants"). (Doc. No. 15, pp. 3-5.)  Plaintiff generally alleges that his constitutional rights were violated in several respects.  *Id.* at 6-8.  Plaintiff seeks injunctive and monetary relief, and demands that criminal charges be brought against the defendants who allegedly assaulted him.  (Doc. No. 15, p. 6; Doc. No. 17, p. 12.)  As directed by the Court, Plaintiff filed a more definite statement to explain his claims in more detail.  (Doc. No. 17.)

### 3. *Plaintiff's factual allegations.*

The following representations were made in either Plaintiff's amended complaint (Doc. No. 15) or his more definite statement (Doc. No. 17).  Plaintiff states that he is 39 years old. (Doc. No. 17, p. 2.)  He is 5 feet, 8 inches tall and weighs 199 pounds.  *Id.*  On June 16, 2022, Plaintiff was brought into custody at the ACDC on charges of violating a protective order (two charges), aggravated assault with a deadly weapon, family violence assault impeding breath, continuous family violence, and interfering with an emergency phone call.  *Id.*  Plaintiff states that his criminal case was set for trial on July 31, 2023.  *Id.*

Plaintiff allegedly suffers from the following medical conditions: (1) "torn" knee and two "torn shoulders;" (2) multiple herniated discs "that became [bulging] and protruding;" (3) epilepsy; (4) a skin rash; and (5) "chronic radiating pain."  (Doc. No. 17, p. 2.)  Plaintiff's multiple conditions were addressed in a treatment plan that included the assignment of an extra

mat. *Id.* The ACDC's medical department assigned two passes to Plaintiff, one for an extra mat and one for a bottom bunk. *Id.*

On or around July 20, 2022, Plaintiff requested that copies of his x-rays and MRIs be placed into his file. (Doc. No. 17, p. 2.) Plaintiff indicates that he notified Deputy Chapa of his injuries on July 20, 2022 and that he assumed Deputy Chapa had spoken "with medical of the importance of having extra mat and bottom bunk pass [sic]." *Id.*

On August 23, 2022, Deputy Chapa allegedly ordered the removal of Plaintiff's extra mat and bottom bunk passes, even though Deputy Chapa was not a medical professional. (Doc. No. 15, p. 6; Doc. No. 17, p. 2.) On this night, Plaintiff was "randomly" moved to another cell and placed on a top bunk with a double mat. (Doc. No. 17, p. 2.) Plaintiff alleges that, despite having proof of Plaintiff's medical conditions and injuries, Deputy Chapa's actions in removing Plaintiff's extra mat and bottom bunk passes interfered with a doctor's treatment plan and caused Plaintiff unnecessary pain and suffering. *Id.*

On August 23, 2022, all of the bedding was allegedly removed from each cell in Plaintiff's eight-man tank, thrown into a pile, and dragged recklessly on the floor. (Doc. No. 15, p. 6; Doc. No. 17, p. 3.) Sheriff Mills, Chief Gutierrez, Deputy Chapa, and Lieutenant Martinez issued the order to remove Plaintiff's bedding, allegedly as a part of a surprise shakedown. (Doc. No. 17, p. 3.) Sergeant Dugger, Corporal Urhea, and Officer Arisola were allegedly responsible for throwing the bedding in a pile. *Id.* Sergeant Maddox allegedly watched the inmates in the gym and gave the orders on searching the beds and placing the bedding in a pile. *Id.* Sergeant Andride allegedly helped the inmates out of their cells into the gym and later returned to help remove the bedding and search the beds. *Id.*

Plaintiff alleges that he did not receive any replacement bedding despite making several requests and filing written grievances.  (Doc. No. 17, p. 3.)  Plaintiff also alleges that he was forced to use dirty bedding until the next laundry day.  *Id.*  Plaintiff's suspects that his bedding was switched with another detainee's bedding, which was allegedly covered with food and coffee, and smelled of bad breath.  *Id.*  As a result of the removal of the original bedding and failure to provide clean bedding, Plaintiff claims that he suffered from skin rashes that affected him physically as well as mentally.  *Id.*

Plaintiff's personal clothing was removed from him on August 23, 2022.  (Doc. No. 17, p. 4.)  Specifically, Plaintiff had three white t-shirts, two underwear, and two socks taken from him.  *Id.* Plaintiff is unable to identify who ordered the removal of the clothing.  *Id.*  As a result of the taking of this clothing, Plaintiff was forced to wear one shirt, two underwear, and one pair of socks for six days because laundry day for whites fell on Tuesdays and Thursdays.  *Id.*  As a result, Plaintiff allegedly suffered rashes in his "jock area," causing scarring and mental anguish. *Id.*

On August 23, 2022, Sergeant Maddox, Sergeant Andride, Corporal Urhea, and Officer Arisola allegedly denied cleaning supplies to Plaintiff.  (Doc. No. 17, p. 4.)  Plaintiff states that he needed the cleaning supplies to sanitize the bathroom sink, bathroom toilet, table, and bunks. *Id.*  Plaintiff acknowledges he was not physically harmed by the denial of cleaning supplies.  *Id.* Plaintiff complains that he was exposed to possible infection or bacteria from seven other detainees by not having the ability to sanitize the sink and toilet.  *Id.*

Plaintiff states that he filed multiple grievances with regard to issues pertaining to bedding, removal of his personal clothing, and denial of cleaning supplies.  (Doc. No. 17, p. 4.)

Deputy Chapa and Lieutenant Martinez allegedly denied all of Plaintiff's claims in these grievances. *Id.*

On August 23, 2022, Plaintiff was allegedly subjected to the use of force by several named defendants. (Doc. No. 17, p. 5.) Before being subjected to the use of force, Plaintiff explained to Sergeant Dugger and Officer Arisola from inside his cell that he could not take his sleeping medication because his bedding had been removed with the replacement bedding being unclean. *Id.* Plaintiff further asked for medical request forms and grievances from Officer Arisola, who denied these requests. *Id.* Plaintiff then requested that "rank" be notified about his bedding issues and sat down to finish completing a grievance. *Id.* Plaintiff alleges that he was told to "pack his stuff" and was threatened with mace. *Id.*

Sergeant Dugger and Officer Arisola allegedly entered Plaintiff's cell without provocation. (Doc. No. 15, p. 7.) Sergeant Dugger then allegedly used a chemical mace on Plaintiff and then tackled Plaintiff into the phone and a brick wall. (Doc. No. 15, p. 7; Doc. No. 17, p. 5.) Plaintiff alleges that Officer Arisola followed Sergeant Dugger's orders and helped tackle and push Plaintiff into the phone and three more walls. (Doc. No. 15, p. 7; Doc. No. 17, p. 6.) Sergeant Dugger, Officer Arisola, and Corporal Urhea allegedly struck Plaintiff in his sides, face, eyeballs, neck, back, head, ribs, and feet. (Doc. No. 15, p. 7; Doc. No. 17, pp. 5-7.) Officer Arisola and Corporal Urhea eventually placed handcuffs on Plaintiff in a tight manner which cut off circulation in Plaintiff's hands and caused bruising. (Doc. No. 17, pp. 6-7.) After the use of force in Plaintiff's cell, Sergeant Dugger, Officer Arisola, and Corporal Urhea allegedly dragged Plaintiff into the hallway, purposely causing Plaintiff's head to hit three chairs and a table. *Id.* at 5, 8.

Plaintiff states that Sergeant Maddox, as the ranking officer in charge on August 23, 2022, ordered the use of force on Plaintiff.  (Doc. No. 17, p. 8.)  Allegedly, Sergeant Maddox had previously threatened Plaintiff an hour before the incident with chemical mace and did nothing to stop the use of force while it was occurring.  *Id.*

As a result of the use of force by Sergeant Dugger, Officer Arisola, and Corporal Urhea, Plaintiff allegedly suffered heavy bruising and knots to his face, boot marks in his leg and rib cage, a busted lip, a chipped tooth, a swollen eyeball, herniated and bulging discs, and a torn shoulder.  (Doc No. 17, pp. 7-8.)  Plaintiff explained to the officers that he was in extreme pain, that he could not stand up or turn his neck, that he had an involuntary bowel movement, and that one of his eyes was hurting.  *Id.* at 7.  Plaintiff requested to be taken to either the ACDC's medical department or the hospital after being dragged into the hallway.  *Id.* at 7, 9.  Plaintiff's request was allegedly denied by Sergeant Maddox, Sergeant Dugger, Corporal Urhea, and Officer Arisola.  *Id.* at 7, 9.  Sergeant Maddox allegedly responded while laughing and smiling that "medical isn't here."  *Id.*  Corporal Urhea responded by smiling and telling Plaintiff he would be fine.  *Id.* at 9.  Officer Arisola, in turn, "just chuckled" and left the scene along with Sergeant Dugger.  *Id.*

Plaintiff waited until the next day, August 24, 2022, to visit the ACDC's medical department, where he was offered Ibuprofen and Tylenol.  (Doc. No. 17, p. 7.)  Plaintiff alleges that he was not able to see a doctor for another two and a half to three months, at which time the doctor ordered x-rays and an MRI.  *Id.*  Plaintiff estimates that the bruising and knots on his face took about 20 days to heal and that the boot marks and bruising to his wrist took about one and a half to two months to heal.  *Id.*  Plaintiff claims that he continues to experience vision problems

with his left eye, his chipped tooth, and his wrist.  *Id.*  Plaintiff states he was told that he needs to see a specialist for his herniated discs.  *Id.*

According to Plaintiff, Sergeant Maddox was present at the scene when Plaintiff was dragged by his shoulders and thrown into an unsanitary holding cell, exposing Plaintiff to unspecified biohazards.  (Doc. No. 15, p. 7.)  Plaintiff described the holding cell as being unclean, having trash in the hole where the toilet was supposed to be, and containing feces.  (Doc. No. 17, p. 8.)  Plaintiff was allegedly left in the holding cell for three hours after being handcuffed by Sergeant Dugger and Corporal Urhea and covered in mace for hours, though he was eventually given a "pickle bucket" with water to rinse his face.  (Doc. No. 15, p. 8; Doc. No. 17, p. 8.)  As a result of being placed in the holding cell, Plaintiff allegedly suffered from pain and a bruised wrist that cut circulation to his wrist and hand, which lasted one and a half to two months.  (Doc. No. 17, p. 8.)  Plaintiff claims that he continues to feel pain in his wrist.  *Id.*

On August 26, 2022, a disciplinary hearing was allegedly held on charges that Plaintiff disrupted the safety, security, and orderly running of the ACDC.  (Doc. No. 17, p. 8.)  Sergeant Maddox, Officer Arisola, and Corporal Urhea allegedly placed Plaintiff in a disciplinary segregation cell, which Plaintiff described as bloodstained and raining heavy condensation directly onto his bunk.  (Doc. No. 15, pp. 7-8; Doc. No. 17, p. 8.)  Plaintiff also described the cell as having "blood and boogers on the bunk, matted clumps of hair in the shower, clogged drain, no cold water, [and] feces."  (Doc. No. 17, p. 8.)  Plaintiff claims that he was exposed to "unnecessary" but unspecified biohazards and was forced to sleep with water raining down on him while he was in extreme pain from the use of excessive force.  *Id.* at 9.  Plaintiff claims that he remained in the disciplinary segregation cell for 19 days.  *Id.* at 8.

At some point while Plaintiff was confined in the disciplinary segregation cell, Plaintiff allegedly requested that he be taken to the ACDC's medical department or the hospital due to his pain, but was denied.  (Doc. No. 15, p. 8.)  Later that night, Deputy Chapa allegedly ordered Lieutenant David and Corporal Fincher to remove Plaintiff's brand new blue mat and to replace it with a ten-year old green mat that oozed a yellow oil and reeked with a foul odor of sweat and urine.  (Doc. No. 15, p. 8; Doc. No. 17, p. 9.)  Plaintiff states that he was injured because the action in replacing the mat interrupted his medical treatment by exposing him to unnecessary biohazards.  (Doc. No. 17, p. 9.)  Plaintiff further alleges that Lieutenant David installed a camera inside his disciplinary segregation cell.  *Id.* at 11.

Plaintiff asserts that he submitted numerous grievances complaining about the excessive use of force, the conditions of his disciplinary segregation cell, the denial of medical treatment, and the replacement of his mat.  (Doc. No. 17, p. 11.)  According to Plaintiff, Sheriff Mills, Deputy Chapa, and Lieutenant Martinez responded to Plaintiff's grievances by attacking Plaintiff's character and rejecting them as baseless and frivolous.  *Id.*

### 4. *Plaintiff's legal claims.*

Plaintiff raises the following claims in his amended complaint and more definite statement:

- Claims against Sheriff Mills in his individual and official capacities.  (Doc. No. 15, p. 3.)  Plaintiff holds Sheriff Mills responsible as the supervisor in charge of overseeing the ACDC.  (Doc. No. 17, p. 10.)  Plaintiff claims that Sheriff Mills failed to provide a functional grievance procedure in that he has allowed a pattern of abuse, harassment, and retaliation.  *Id.*  Plaintiff further claims that Sheriff

Mills has failed to respond to many of Plaintiff's grievances and has personally attacked Plaintiff and improperly dismissed his other grievances as frivolous.  *Id.*

- Claims against Chief Gutierrez in his individual and official capacities.  (Doc. No. 15, p. 3.)  Plaintiff claims that Chief Gutierrez failed to respond to Plaintiff's grievances as the chief deputy and investigator of the ACDC.  (Doc. No. 17, p. 10.)  Plaintiff further claims that Chief Gutierrez has failed to provide a functional grievance procedure in that he has allowed a pattern of abuse and harassment.  *Id.*

- Claims against Deputy Chapa in his individual and official capacities.  (Doc. No. 15, p. 3.)  Plaintiff claims that Deputy Chapa has failed to follow the grievance procedures and has retaliated against Plaintiff for exercising the use of grievances by discouraging Plaintiff from filing grievances.  (Doc. No. 17, p. 10.)  Plaintiff further claims that Deputy Chapa has failed to ensure proper disciplinary hearings, engaged in fraudulent misrepresentations, interrupted Plaintiff's treatment plan, and denied Plaintiff due process, medical treatment, and equal protection.  *Id.*

- Claims against Lieutenant Martinez in his individual and official capacities. (Doc. No. 15, p. 3.)  Plaintiff claims that Lieutenant Martinez abused his position and allowed a campaign of harassment against Plaintiff.  (Doc. No. 17, p. 10.) Plaintiff further claims that Lieutenant Martinez retaliated against Plaintiff for filing grievances by actively discouraging Plaintiff from filing grievances, failed to follow proper disciplinary hearing procedures, denied Plaintiff due process, denied Plaintiff medical treatment, and denied Plaintiff equal protection and decent conditions.  *Id.*

- Claims against Lieutenant David in his individual and official capacities.  (Doc. No. 15, p. 3.)  Plaintiff claims that Lieutenant David violated his rights by installing a camera in Plaintiff's disciplinary segregation cell, ignoring the heavy condensation on the ceiling, and failing to correct the actions of Corporal Fincher in removing the double mat and replacing it with a single unsanitary green mat. (Doc. No. 17, p. 11.)

- Claims against Corporal Fincher in his individual and official capacities.  (Doc. No. 15, p. 4.)  Plaintiff claims that that Corporal Fincher ignored the conditions of Plaintiff's disciplinary segregation cell, denied him decent conditions, and exposed Plaintiff to a biohazard when replacing his mat.  (Doc. No. 17, p. 11.)

- Claims against Sergeant Maddox in her individual and official capacities.  (Doc. No. 15, p. 4.)  Plaintiff claims that Sergeant Maddox engaged in a campaign of abuse and harassment as well as used excessive force on Plaintiff.  (Doc. No. 17, p. 11.) Plaintiff further claims that Sergeant Maddox ignored Plaintiff's disciplinary segregation cell conditions, denied Plaintiff due process, denied Plaintiff medical treatment, and exposed Plaintiff to biohazards by denying Plaintiff cleaning supplies and clean bedding.  *Id.*

- Claims against Sergeant Dugger in his individual and official capacities.  (Doc. No. 15, p. 4.)  Plaintiff claims that Sergeant Dugger applied excessive force against him on August 23, 2022 by using mace and striking Plaintiff all over his body.  (Doc. No. 17, p. 11.)  Plaintiff further claims that Sergeant Dugger denied Plaintiff medical treatment, violated his due process rights, denied him cleaning supplies, denied him clean bedding, and exposed him to biohazards.  *Id.*

- Claims against Corporal Urhea in his individual and official capacities. (Doc. No. 15, p. 5.)  Plaintiff claims that Corporal Urhea applied excessive force against him on August 23, 2022 by striking Plaintiff all over his body. (Doc. No. 17, p. 11.)  Plaintiff further claims that Corporal Urhea denied Plaintiff medical treatment, denied Plaintiff decent conditions in his disciplinary segregation cell, violated his due process rights, denied him cleaning supplies, denied him clean bedding, and denied Plaintiff's grievances. *Id.*

- Claims against Officer Arisola in his individual and official capacities. (Doc. No. 15, p. 5.)  Plaintiff claims that Officer Arisola applied excessive force against him on August 23, 2022 by striking Plaintiff all over his body. (Doc. No. 17, p. 12.)  Plaintiff further claims that Officer Arisola denied Plaintiff medical treatment, denied Plaintiff decent conditions in his disciplinary segregation cell, violated his due process rights, denied him cleaning supplies, denied him clean bedding, and denied Plaintiff's grievances. *Id.*

- Claims against Sergeant Andride in his individual and official capacities. (Doc. No. 15, p. 5.)  Plaintiff claims that Sergeant Andride denied Plaintiff cleaning supplies, denied him clean bedding, and denied Plaintiff's grievances. (Doc. No. 17, p. 12.)

### C.  Legal standard.

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *see also* 28 U.S.C. §

1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant).  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that the defendant is liable.  *Id*.; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### D. Discussion.

#### 1. Plaintiff's claims against the defendants who were omitted from the amended complaint should be dismissed without prejudice.

In his original complaint, Plaintiff sued the following defendants: Sheriff Mills, Chief Gutierrez, Deputy Chapa, Lieutenant Martinez, Sergeant Dugger, Officer Arisola, Corporal Urhea, Sergeant Maddox, Head Nurse Heather, Corporal Cooper, Officer Sorteors, Officer Mendoza, Corporal Fincher, Sergeant Andride, Sergeant Lopez, Sergeant Tober, Lieutenant David, CPI Roe, Officer Alvarado, and John Doe. (Doc. No. 1, pp. 3, 6-7.) In his amended complaint, however, Plaintiff names only the following defendants: Sheriff Mills, Chief Gutierrez, Deputy Chapa, Lieutenant Martinez, Lieutenant David, Sergeant Maddox, Sergeant Dugger, Corporal Fincher, Corporal Urhea, Sergeant Andride, and Officer Arisola. (Doc. No. 15, pp. 3-5).

Plaintiff's amended complaint (Doc. No. 15) superseded his original complaint (Doc. No. 1). *See Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 449 (S.D. Tex. 2012) (Rosenthal, J.) ("An amended complaint supersedes and replaces an original complaint, unless the amendment specifically refers to or adopts the earlier pleading.") (internal quotation

marks and citation omitted)).  In light of the parties named as defendants in the amended complaint, and because Plaintiff did not specifically refer to or adopt his original complaint in his amended complaint, the undersigned recommends that Head Nurse Heather, Corporal Cooper; Officer Sorteors, Officer Mendoza, Sergeant Lopez, Sergeant Tober, Corporal Roe, Officer Alvarado, and John Doe be dismissed without prejudice from this case.  *Cf. Bolden v. Cox*, No. 13-1612, 2014 WL 7005912, at *1 n.2 (W.D. La. Dec. 10, 2014) (defendants named in original complaint but omitted from amended complaint were "effectively dismiss[ed]" from the case).

### 2.  Plaintiff's § 1983 claims against Defendants in their official capacities should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

In addition to his individual-capacity claims, which will be discussed later, Plaintiff has sued all of the defendants in their official capacities.  Suits against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations and citation omitted).  Thus, Plaintiff's suit against Defendants in their official capacities is effectively a suit against the officials' office, Aransas County.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Under § 1983, a municipality or local government entity may be held liable for acts for which it is actually responsible.  *See Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).  The governmental body must either itself subject a person to a deprivation of rights or cause a person to be subjected to such deprivation.  *Connick v. Thompson*, 563 U.S. 51, 59 (2011).  A municipality is liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy or custom.  *Monell v. New York City*

*Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (noting that a municipality may not be subject to liability merely for employing a tortfeasor; liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation).  An official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 60.

Liability of a municipality under § 1983 therefore requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.  *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  And "isolated unconstitutional actions by municipal employees will almost never trigger liability," because "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur."  *Piotrowski*, 237 F.3d at 578.

For several distinct reasons, Plaintiff's claims – even as amended and supplemented by his more definite statement, accepted as true, and liberally construed – fail to plausibly allege the elements required for municipal liability under § 1983.  First, Plaintiff does not allege that any of the named defendants are policymakers in Aransas County.  Second, and more importantly, while Plaintiff generally discusses how jail officials treated him, he does not allege the existence of official policies regarding the use of force, access to medical treatment, access to cleaning or bedding supplies, or the procedures used in conducting disciplinary proceedings and placing inmates in disciplinary segregation.  Plaintiff certainly does not allege such policies in any depth of detail to suggest that they are the "moving force" behind the alleged violations of Plaintiff's constitutional rights.  *Cf. Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.

1997) (holding that a plaintiff must provide specific facts regarding the description of a policy and its relationship to the underlying constitutional violation).

Additionally, Plaintiff's allegations primarily reference only his own situation in the ACDC.  He does not provide in sufficient detail allegations of other incidents in which the constitutional rights of inmates have allegedly been violated.  This is insufficient to allege a plausible claim for municipal liability under § 1983.  *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009) (explaining that, to show custom that fairly represents municipal policy, the plaintiff must show "sufficiently numerous prior incidents" as opposed to "isolated instances") (citation omitted); *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("Allegations of an isolated incident are not sufficient to show the existence of a custom or policy.").  Because Plaintiff has not plausibly alleged the existence of a policy or custom, or that any such policy was the "moving force" behind the alleged violation of his constitutional rights, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed without prejudice.

### 3.  Plaintiff's § 1983 claims seeking criminal charges to be brought against those defendants who allegedly assaulted him should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Plaintiff seeks criminal charges to be brought against those defendants who allegedly assaulted him.  (Doc. No. 117, p. 12.)  Prisoners, however, have no constitutional right to compel the criminal prosecution of someone else.  *See Hicks v. Bingham*, No. No. 6:18cv308, 2018 WL 6238003, at *3 (E.D. Tex. Sept. 21, 2018), *adopted*, 2018 WL 6192290 (E.D. Tex. Nov. 28, 2018) (citing *Oliver v. Collins*, 914 F.2d 56 (5th Cir. 1991)).  Private citizens lack any justicially cognizable interest in prosecuting individuals.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  Thus, an individual cannot seek criminal prosecution even if he or she was the victim of

a criminal offense committed by another.  *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988).

Because Plaintiff cannot pursue criminal charges being brought against any named defendant,

the undersigned recommends that his claims seeking such relief be dismissed with prejudice as

frivolous or for failure to state a claim upon which relief can be granted.

### 4.  The district court should retain Plaintiff's Fourteenth Amendment excessive force claims against Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea in their individual capacities.

Plaintiff's excessive-use-of-force claims arise under the Fourteenth Amendment because

the incident at issue occurred on August 23, 2022, while Plaintiff was a pretrial detainee.  *See*

*Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) (abrogating the application of Eighth

Amendment excessive force standards articulated in *Hudson v. McMillian*, 503 U.S. 1 (1992) to

pretrial detainees).  To sufficiently state an excessive force claim, "a pretrial detainee must show

only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.*

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular

case.'"  *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The reasonableness

of the force used must be assessed "from the perspective and with the knowledge of the

defendant officer" and with "deference to policies and practices needed to maintain order and

institutional security."  *Id.* at 399-400.  In determining the objective reasonableness of an

officer's use of force, a court should consider the following non-exclusive factors: (1) "the

relationship between the need for the use of force and the amount of force used"; (2) "the extent

of the plaintiff's injury"; (3) "any effort made by the officer to temper or limit the amount of

force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by

the officer"; and (6) "whether the plaintiff was actively resisting."  *Id.* at 397.

The Supreme Court recognizes that, while no particular quantum of injury is required, the extent of injury suffered by an inmate is an important factor courts consider when determining whether the amount of force used on a pretrial detainee was reasonable.  *See Kingsley*, 576 U.S. at 397; *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  The Fifth Circuit and district courts have consistently dismissed cases where the inmate alleges nothing more than a *de minimis* injury in the complaint.  *See, e.g., Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (affirming district court's dismissal of plaintiff's excessive force claim where injury consisted of "a sore, bruised ear lasting for three days" was *de minimis*); *Welsh v. Correct Care Recovery Solutions*, 845 F. App'x 311, 318 (5th Cir. 2021) (affirming district court's dismissal of plaintiff's excessive force claim where injuries consisting of bruising and swelling lasting for one week were *de minimis*).

Nevertheless, "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only."  *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (footnote omitted).  "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'"  *Kingsley*, 576 U.S. at 397.  "[A]s long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force."  *Brown*, 524 F. App'x at 79 (footnotes omitted) (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)).

Here, Plaintiff alleges that Sergeant Dugger, Officer Arisola, and Corporal Urhea subjected him to excessive use of force on August 23, 2022, when:

- These officers entered his cell without provocation (Doc. No. 15, p. 7);

20 / 56

- Sergeant Dugger used chemical mace on Plaintiff and then tackled him into a brick wall (Doc. No. 15, p. 7; Doc. No. 17, p. 5);

- These officers each struck Plaintiff repeatedly in his sides, face, eyeballs, neck, back, head, ribs, and feet (Doc. No. 15, p. 7; Doc. No. 17, pp. 5-7);

- Officer Arisola and Corporal Urhea placed handcuffs on Plaintiff in a tight manner which cut off circulation in Plaintiff's hands and caused bruising (Doc. No. 17, pp. 6-7); and

- Sergeant Dugger, Officer Arisola, and Corporal Urhea dragged Plaintiff into the hallway, purposely causing Plaintiff's head to hit three chairs and a table (*id.* at 5, 8).

Plaintiff further alleges that Sergeant Maddox, as the ranking officer in charge on August 23, 2022, ordered the use of force on Plaintiff.  (Doc. No. 17, p. 8.)  As a result of these alleged uses of force, Plaintiff avers that he suffered heavy bruising and knots to his face, boot marks in his leg and rib cage, a busted lip, chipped tooth, a swollen eyeball, herniated and bulging discs, torn shoulder, and extensive bruising to his wrists.  *Id.* at 6-8.

Applying the *Kingsley* factors to the facts alleged, which must be accepted as true for purposes of screening, the undersigned concludes that the actions of Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea – in ordering and carrying out the alleged repeated striking of Plaintiff, application of chemical spray, handcuffing of Plaintiff in such a manner to cut off circulation, and the dragging of Plaintiff in a manner to cause him to strike room furniture – were objectively unreasonable especially in light of the significant injuries allegedly suffered by Plaintiff as a result of the combination of force applied against him.  *See, e.g., Fennell v. Quintela, 393 F. App'x 150, 152 (5th* Cir. 2010) (holding that allegations that one prison officer

slammed plaintiff against a wall and injured his shoulder and another officer grabbed and twisted his wrists and injured his wrists, presented a fact issue as to whether the force used was excessive and clearly unreasonable); *Drumm v. Valdez*, No. 3:16-CV-3482-M-BH, 2019 WL 7494443, at *5 (N.D. Tex. Dec. 3, 2019), *adopted*, 2020 WL 85163 (N.D. Tex. Jan. 6, 2020) (finding that detainee's allegations of officers hitting him, placing him on the floor, restraining his arms, choking him, and closing a cell door on him reasonably suggested that the use of force by several officers was objectively unreasonable).  Plaintiff's allegations further indicate that he did nothing to provoke the use of such force, that the officers made little to no effort to temper or limit the amount of force, and that Plaintiff did not present the officers with a serious security issue at the time of the use of force since he was already confined in his cell.

Accordingly, accepting Plaintiff's allegations as true, the undersigned finds that Plaintiff states Fourteenth Amendment excessive force claims against Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea.  The undersigned recommends that Plaintiff's Fourteenth Amendment excessive force claims be retained against these four defendants in their individual capacities.

> ### 5.  The district court should retain only Plaintiff's Fourteenth Amendment episodic acts or omissions claim regarding the denial of medical care against Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea in their individual capacities.  The district court should dismiss with prejudice Plaintiff's remaining Fourteenth Amendment episodic and conditions of confinement claims against Defendants in their individual capacities as frivolous or for failure to state a claim upon which relief may be granted.

### a.  Law.

"The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment."  *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015).  "The Fourteenth Amendment requires that state

officials not disregard the 'basic human needs of pretrial detainees, including medical care.'"
*Estate of Henson v. Krajca*, 440 F. App'x 341, 343 (5th Cir. 2011) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (*en banc*)); *see also Wichita Cnty.,* 795 F.3d at 462 (quoting this language from *Krajca*).  "[T]he substantive limits on state action set by the Due Process Clause provide that the state cannot punish a pretrial detainee."  *Wichita Cnty.*, 795 F.3d at 462.

In the Fifth Circuit, the court's analysis depends on whether a plaintiff is alleging an episodic act or omission of an individual state official or the constitutionality of the conditions of confinement.  *Id.*  "A challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'"  *Id.* at 463 (quoting *Hare*, 74 F.3d at 644).  Generally, it is the conditions themselves that constitute the harm, "for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions."  *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (*en banc*).  Courts apply the test set forth in *Bell v. Wolfish* in conditions-of-confinement cases.  *Wichita Cnty. 795 F.3d* at 463.  Under *Bell*, the question is "whether those conditions [about which the plaintiff complains] amount to punishment of the detainee."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  If an act is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  *Id.* at 539 (quotation marks and citation omitted).  Sometimes challenged conditions are explicit, and sometimes they reflect a *de facto* policy.  *Wichita Cnty.*, 795 F.3d at 463.

"An episodic-acts-or-omissions claim, by contrast, 'faults specific jail officials for their acts or omissions.'"  *Id.* (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009)).  A person typically "is interposed between the detainee and the municipality, such that the

detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott*, 114 F.3d at 53.  Thus, the plaintiff complains first of a certain act or omission and then "'derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.'" *Wichita Cnty.*, 795 F.3d at 463 (quoting *Scott*, 114 F.3d at 53).  Intentionality is not presumed for episodic acts or omissions claims, and a jail official violates the pretrial detainee's constitutional rights "when the official had 'subjective knowledge of a substantial risk of serious harm' to the detainee and responded to that risk with deliberate indifference." *Id.* at 464 (quoting *Hare*, 74 F.3d at 650).  "In other words, the state official must know of and disregard an excessive risk to inmate health and safety." *Id.*

In *Scott*, the Fifth Circuit determined that the facts, which included allegations of sexual assaults due to inadequate staffing, bore a "closer resemblance to cases regarding episodic acts by prison employees." *Scott*, 114 F.3d at 54.  Similarly, in *Wichita Cnty.*, the Fifth Circuit determined that claims against a physician in charge of the jail who the plaintiffs claimed acted with deliberate indifference in failing to provide appropriate medical evaluation or transport for the detainee, who ultimately died in custody, were "properly characterized . . . as attacking episodic acts or omissions rather than conditions of [the detainee's] confinement." *Wichita Cnty.*, 795 F.3d at 464-65.  The court further explained that for the conditions-of-confinement "test to apply, a jailer's act or omission must implement a rule . . . or otherwise demonstrate the existence of an identifiable practice . . . [and in] the absence of such a [rule or practice], a jail official's acts or omission can give rise to constitutional liability only if he was culpable." *Id.*

A plaintiff is not required to elect between these two theories of liability. "[T]here is no rule barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately." *Wichita Cnty.*, 795 F.3d at 464.

### b. Episodic acts or omissions claims.

The Fifth Circuit has held that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare*, 74 F.3d at 650. Following *Hare*, the Fifth Circuit further explained that "[w]hen the alleged unconstitutional conduct involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights, regardless of whether the individual is a pretrial detainee or state inmate." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

A pretrial detainee alleging acts or omissions condition of confinement claim under the Fourteenth Amendment must satisfy tests for both objective and subjective components of the claim; the same tests as a convicted inmate alleging an Eighth Amendment violation." *Matthews v. Lo*, No. 21-1862, 2022 WL 4545613, at *11 (E.D. La. Aug. 23, 2022), *adopted*, 2022 WL 4534723 (E.D. La. Sep. 27, 2022) (citing *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (determining that for an inmate to demonstrate an Eighth Amendment claim based on prison conditions, a plaintiff must show a sufficiently serious deprivation, and must show that the relevant official or officials acted with deliberate indifference to inmate health or safety) and *Hare*, 74 F.3d at 643 ("Finding no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs, …we conclude that a state jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be

measured by a standard of deliberate indifference enunciated by the Supreme Court in [*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)]")).

Under the objective component, the deprivation alleged must be "sufficiently serious," resulting in "a substantial risk of serious harm."  *Farmer*, 511 U.S. at 832; *see also Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021) (explaining that, under the objective prong of the test for deliberate indifference, the inmate must first prove "an objective exposure to a substantial risk of harm").  To be "sufficiently serious," the deprivation must deny a plaintiff of "the minimal measure of life's necessities."  *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999).

To prove the subjective prong of the deliberate indifference test, the inmate must establish that the prison official "had subjective knowledge that the inmate faced a substantial risk of harm [to the inmate's health and safety] and … [consciously] disregarded the risk." *Valentine*, 993 F.3d at 281; *see also Lawson v. Dallas Cnty*, 286 F.3d 257, 262 (5th Cir. 2002). In other words, "[an] official violates a pretrial detainee's constitutional rights to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detained and responded to that risk with deliberate indifference."  *Cope v. Cogdill*, 3 F.4th 198, 206-07 (5th Cir. 2021) (internal quotations and citation omitted).

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).  The Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'"  *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge

of the substantial risk.").  The Supreme Court further explains that "an official's failure to alleviate a significant risk that he should have perceived but did not" falls short of constituting deliberate indifference.  *Farmer*, 511 U.S. at 838.

### i. Removal of extra mat and bottom bunk pass.

Plaintiff alleges that: (1) he suffers from multiple medical conditions involving epilepsy, chronic pain and injuries to his knee, shoulders, and back; (2) in connection with a treatment plan ordered by medical providers in the ACDC medical department, Plaintiff was assigned two passes, one for an extra mat and one for a bottom bunk; (3) before August 23, 2022, Plaintiff notified Deputy Chapa of his injuries and assumed he had conferred with the medical department about the importance of having an extra mat and bottom bunk pass; (4) on August 23, 2022, Deputy Chapa ordered the removal of Plaintiff's extra mat and bottom bunk pass; (4) Plaintiff was moved to another cell and placed on a top bunk with a double mat; and (5) Deputy Chapa's actions interfered with a doctor's treatment plan and caused Plaintiff unnecessary pain and suffering.  (Doc. No. 17, p, 2.)  Liberally construed, Plaintiff's allegations are raising episodic acts omissions due process claims based on Deputy Chapa's order to remove Plaintiff's extra mat and bottom bunk passes.

Plaintiff's allegations, accepted as true for purposes of screening, indicate that the removal of Plaintiff's passes for an extra mat and bottom bunk restriction exposed him to a substantial risk of serious harm.  This is especially true given his allegations that a medical provider authorized these passes to alleviate pain and the risk of further injury associated with Plaintiff's allegedly serious physical issues.

However, even assuming Plaintiff's allegations pass the objective test for deliberate indifference, they fail to show that Deputy Chapa had subjective knowledge that Plaintiff faced a

substantial risk of harm and consciously disregarded the risk by ordering the removal of the

passes. *Valentine*, 993 F.3d at 281. Plaintiff alleges only that he had informed Deputy Chapa of

his physical injuries. Plaintiff alleges no facts to suggest that Deputy Chapa had any knowledge

or awareness of Plaintiff's treatment plan or the importance of having an extra mat or bottom

bunk as part of his treatment plan. Plaintiff's allegations reflect his assumption that Deputy

Chapa spoke with the medical department about the importance of having an extra mat and

bottom bunk restriction and does not indicate that such discussion ever took place. At best,

Plaintiff's allegations show that Deputy Chapa's actions in removing the passes without having a

discussion with the medical department amounted to a negligent or grossly negligent response to

a substantial risk of serious harm. *See Farmer*, 511 U.S. at 838 (explaining that the "failure to

alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to

show deliberate indifference); *Thompson*, 245 F.3d at 459 ("[D]eliberate indifference cannot be

inferred from a negligent or grossly negligent response to a substantial risk of harm.").

 Accordingly, the undersigned recommends that Plaintiff's episodic acts or omissions due

process claim against Deputy Chapa in his individual capacity, based on the removal of

Plaintiff's extra mat and bottom bunk passes, be dismissed with prejudice as frivolous or for

failure to state a claim upon which relief may be granted.

### ii. Removal of bedding.

 Plaintiff alleges that: (1) on August 23, 2022, Sheriff Mills, Chief Gutierrez, Deputy

Chapa, and Lieutenant Martinez ordered the removal of all bedding from Plaintiff's eight-man

cell tank as part of a surprise shakedown; (2) these defendants further ordered that the bedding be

recklessly dragged on the floor and thrown into a pile; (3) Sergeant Dugger, Corporal Urhea, and

Officer Arisola were the officers responsible for throwing the bedding into a pile; (4) Sergeant

Maddox also participated by ordering the beds in the eight-man tank to be searched while the bedding was placed in a pile; (5) Sergeant Andride helped to search the beds and also remove the bedding; (6) Plaintiff did not receive any replacement bedding and was forced to use dirty bedding until the next laundry day; (7) Plaintiff's replacement bedding, which had been switched with another inmate's bedding, was covered with food, coffee, and smelled of bad breath; and (8) Plaintiff suffered from skin rashes as a result of the removal of the original bedding and failure to provide clean bedding.  (Doc. No. 17, p. 3.)  Liberally construed, Plaintiff's allegations are raising episodic-acts-omissions due process claims based on the actions of the officers in removing Plaintiff's bedding.

Plaintiff's allegations, accepted as true for purposes of screening, fail to satisfy either the objective or subjective prong of the deliberate indifference test.  The deprivation of bedding for a limited period of time does not give rise to a constitutional claim.  *See Hill v. Smith*, No. 20-1042, 2020 WL 2226316, at * 2 (E.D. La. Apr. 1, 2020), *adopted*, 2020 WL 2219366 (E.D. La. May 7, 2020) (dismissing as frivolous a pre-trial detainee's Fourteenth Amendment due process claim he had been detained in a cell without a bed or mat for 18 days); *Grissom v. Davis*, 55 F. App'x 756, 758 (6th Cir. 2003) (concluding that seven days without a mattress, sheets, or blanket is not a deprivation of basic human needs).  Rather than indicate that he was denied bedding altogether for a significant amount of time, Plaintiff alleges instead that he was forced to use dirty bedding because his original bedding was never replaced.  Plaintiff's allegations, at best, describe a temporary period of annoyance and discomfort with the replacement bedding and do not indicate that jail officials deprived him of "the minimal measure of life's necessities." *Palmer*, 193 F.3d at 352.

Furthermore, Plaintiff alleges that he only suffered skin rashes as a result of having to use, in his words, "dirty bedding."  (Doc. No. 17, p. 3.)  Courts have held that issues such as skin rash or heat rash fail to describe a serious medical need.  *See Tasby v. Cain*, 86 F. App'x 745, 746 (5th Cir. 2004); *Wells v. Franzen*, 777 F.2d 1258, 1264 (7th Cir. 1985) (finding no indication that a rash was a serious medical need); *Perez v. Richland Det. Ctr.*, No. 19-1124, 2019 WL 6038031, at *12 (W.D. La. Oct. 24, 2019), *adopted*, 2019 WL 6003241 (W.D. La. Nov. 13, 2019) (finding that a heat rash is not a serious medical need).  Plaintiff, therefore, has failed to show that he was exposed to a substantial risk of serious harm through having to sleep with dirty bedding.

Moreover, Plaintiff's allegations fail to show that any of the officials who ordered or otherwise participated in the removal of Plaintiff's original bedding had subjective knowledge that Plaintiff faced a substantial risk of harm and consciously disregarded such risk through their actions.  *Valentine*, 993 F.3d at 281.  According to Plaintiff's own allegations, the orders to remove the bedding in Plaintiff's eight-man tank were given not to target Plaintiff, but instead as part of a cell shakedown involving each inmate in Plaintiff's tank.  Plaintiff advances no allegations to suggest that either: (1) the officials who ordered the removal of the bedding or the officers who carried out the orders were aware that Plaintiff faced a threat of serious harm through the removal of Plaintiff's original bedding; or (2) any named officer was aware of a risk of serious harm to Plaintiff in connection with the dirty bedding provided to him.  At best, Plaintiff's allegations show that the actions taken by the named defendants in removing Plaintiff's original bedding and failure to provide clean bedding amounted to negligence.  *See Farmer*, 511 U.S. at 838; *Thompson*, 245 F.3d at 459.

Accordingly, the undersigned recommends that Plaintiff's episodic acts or omissions due process claim, based on the actions of several named defendants in removing Plaintiff's original bedding and not providing clean bedding, be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### iii.  Removal of articles of clothing.

Plaintiff alleges that, on August 23, 2022, jail officials removed from him three white t-shirts, two sets of underwear, and two socks.  (Doc. No. 17, p. 4.)  According to Plaintiff, he was forced to wear one shirt, two sets of underwear, and one pair of socks for six days because laundry day fell on Tuesdays and Thursdays of each week.  *Id.*  Plaintiff could not identify the official responsible for ordering the removal of several articles of Plaintiff's clothing.  *Id.*  Plaintiff alleges that he suffered rashes in his "jock area" that scarred.  *Id.*  Liberally construed, Plaintiff's allegations are construed as raising episodic acts or omissions due process claims based on the decision by jail officials to remove several articles of clothing from Plaintiff.

Plaintiff's allegations, accepted as true for purposes of screening, fail to satisfy either the objective or subjective prong of the deliberate indifference test.  The undersigned recognizes that the Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement," which includes that they ensure inmates receive adequate clothing.  *Farmer*, 511 U.S. at 832; *Hare*, 74 F.3d at 650; *see also Lumpkin v. Kaufman Cnty. Sheriff's Office*, No. 3:21-CV-1842-N (BH), 2023 WL 3046354, at *8 (N.D. Tex. Mar. 15, 2023), *adopted*, 2023 WL 3047396 (N.D. Tex. Apr. 21, 2023) (recognizing that "an inmate is entitled to adequate clothing while in prison").  Plaintiff's allegations reflect only that some of his clothes were taken from him and that he was forced to go without clean clothing for a temporary amount of time. His allegations, which again show that he experienced a temporary period of discomfort, fail to

indicate that jail officials deprived him of "the minimal measure of life's necessities." *Palmer*, 193 F.3d at 352. Further, Plaintiff's allegation that he suffered a rash in the jock area due to his limited clothing options fails to describe a serious medical need. *See Tasby*, 86 F. App'x at 746; *Wells*, 777 F.2d at 1264; *Perez*, 2019 WL 6038031, at *12. Plaintiff, therefore, has failed to show that he was exposed to a substantial risk of serious harm based on the actions of officials in taking some of his clothes.

Moreover, Plaintiff fails to indicate that any of the named defendants in this case had any role in ordering the taking of his clothing. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). His allegations otherwise fail to show that any jail official who may have been involved in ordering the removal of Plaintiff's clothes had subjective knowledge that Plaintiff faced a substantial risk of harm and consciously disregarded such risk through their action. *Valentine*, 993 F.3d at 281.

Accordingly, the undersigned recommends that Plaintiff's episodic acts or omissions due process claim, based on the actions of unidentified officials in taking some of Plaintiff's clothing, be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### iv. Denial of cleaning supplies.

Plaintiff alleges that, on August 23, 2023, Sergeant Maddox, Sergeant Andride, Corporal Urhea, and Officer Arisola denied cleaning supplies to Plaintiff. (Doc. No. 17, p. 4.) Plaintiff further alleges that he needed the cleaning supplies to sanitize the bathroom sink, bathroom toilet, table, and bunks. *Id.* While acknowledging he was not physically harmed by the denial of cleaning supplies, Plaintiff believes he was exposed to possible infections or bacteria from seven other inmates in his tank because he did not have the ability to sanitize the sink and toilet. *Id.*

Liberally construed, Plaintiff's allegations are construed as raising episodic acts or omissions due process claims based on allegations that ACDC officers denied Plaintiff's requests for cleaning supplies.

Plaintiff's allegations, accepted as true for purposes of screening, fail to satisfy either the objective or subjective prong of the deliberate indifference test. Plaintiff offers no specific allegations to show that he was at risk for contracting a specific infection or other illness from bacteria. Plaintiff's allegations fail to indicate that suffered any serious injury or that he was exposed to a substantial risk of serious harm through the actions of several defendants in denying him cleaning supplies on August 23, 2022.

Moreover, Plaintiff's allegations fail to show that Sergeant Maddox, Sergeant Andride, Corporal Urhea, or Officer Arisola had subjective knowledge that Plaintiff faced a substantial risk of harm and consciously disregarded such risk through their actions in denying cleaning supplies to Plaintiff. *Valentine*, 993 F.3d at 281. Plaintiff alleges no facts to suggest that these defendants were aware of any sanitation problem in and around Plaintiff's cell on August 23, 2022 that posed a serious threat to Plaintiff's health. *See McGiffin v. Valdez*, No. V-07-043, 2009 WL 3073939, at *5-6 (S.D. Tex. 2009) (Rainey, J.) (dismissing inmate's claim regarding conditions of confinement where prisoner did not plead facts showing that defendants were aware of a substantial risk of harm or that the sanitation problem posed a serious threat to the inmate's health).

Accordingly, the undersigned recommends that Plaintiff's episodic-acts-or-omissions due process claim against Sergeant Maddox, Sergeant Andride, Corporal Urhea, or Officer Arisola, based on their actions in denying Plaintiff cleaning supplies on August 23, 2022, be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### v. *Denial of medical treatment.*

Plaintiff claims that Sergeant Maddox, Sergeant Dugger, Corporal Urhea, and Officer Arisola denied him medical treatment immediately after their use of force on August 23, 2022. (Doc. No. 17, p. 7.)  While housed in a county jail, detainees have "a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference."  *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (quoting *Thompson*, 245 F.3d at 457).  Plaintiff's allegations against these defendants are construed as raising an episodic acts or omissions due process claim.

"[T]here is no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs such as medical care."  *Reyes v. Tom Green Jail*, No. 6:19-CV-00037-BU, 2022 WL 3588932, at *5 (N.D. Tex. Aug. 1, 2022), *adopted*, 2022 WL 3588044 (N.D. Tex. Aug. 22, 2022) (citing *Hare*, 74 F.3d at 643).  Courts, therefore, apply the same deliberate indifference standard to medical claims brought by both pretrial detainees and convicted inmates.  *Kelson*, 1 F.4th at 418.

Again, "[d]eliberate indifference is "an extremely high standard to meet."  *Domino*, 239 F.3d at 754.  To establish deliberate indifference regarding denial-of-medical care claims:

> The [pretrial detainee] must first prove objective exposure to a substantial risk of serious harm—in other words, the [pretrial detainee] must prove a serious medical need.  Second, the [pretrial detainee] must prove the officials' subjective knowledge of this substantial risk.  Third, the [pretrial detainee] must prove that the officials, despite their actual knowledge of the substantial risk, denied or delayed the [pretrial detainee's] medical treatment.  Finally, the [pretrial detainee] must prove that the delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain.  Importantly, disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference.

*Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (cleaned up); *see also Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 305 (5th Cir. 2020) ("To prove deliberate indifference, the Plaintiffs must show that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the defendants actually drew the inference, and that the defendants disregarded that risk by failing to take reasonable measures to abate it." (cleaned up)).  A serious medical need is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks and citation omitted).  As noted above, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."  *Dyer*, 964 F.3d at 381 (internal quotations and citation omitted).

Here, Plaintiff alleges that, after the use of force which included being dragged into the hallway, he informed the officers that he was in extreme pain, that he could not stand up or turn his neck, that he had an involuntary bowel movement, and that one of his eyes was hurting. (Doc. No. 17, pp. 7, 9.)  After requesting to be taken either to the ACDC's medical department or to a hospital, Plaintiff alleges further that: Sergeant Maddox responded by laughing, smiling, and saying to Plaintiff that "medical isn't here"; Corporal Urhea responded also by smiling and telling Plaintiff that he would be fine; and Officer Arisola chuckled in response and left the scene with Sergeant Dugger.  *Id.* at 7, 9.  According to Plaintiff, he had to wait one day to visit the

ACDC's medical department where he was only given Ibuprofen and Tylenol. *Id.* at 7.  Plaintiff further alleges that: (1) he was not seen by a doctor for another two and a half to three months; (2) it took several weeks for the bruising and knots in his face, the boot marks, and the bruising this wrist to heal; (3) he continues to experience vision problems with his left eye, his chipped tooth, and his wrist; and (4) he was informed that he needed to see a specialist for his herniated discs. *Id.*

Plaintiff's allegations, accepted as true for purposes of screening, indicate that he had serious medical needs following the August 23, 2022 use of force.  Plaintiff states that he suffered significant injuries in the form of heavy bruising and knots to his face, boot marks in his leg and rib cage, a busted lip, chipped tooth, a swollen eyeball, herniated and bulging discs, torn shoulder, and extensive bruising to his wrists.  (Doc. No. 17, pp 6-8.)  Plaintiff's allegations, therefore, are sufficient to show an "objective exposure to a substantial risk of serious harm" should he need medical care immediately after the use of force.  *Petzold*, 946 F.3d at 249.

Plaintiff's allegations further reflect that the four defendants who applied force were the same officers who denied him medical care that day.  Having applied force against Plaintiff in the manner described, Plaintiff's allegations reflect that his serious medical needs were so obvious and apparent – especially given his complaints of extreme pain – that even Sergeant Maddox, Sergeant Dugger, Corporal Urhea, and Officer Arisola, who are neither medical providers nor caregivers, should have recognized that Plaintiff needed immediate medical attention.  *See Gobert*, 463 F.3d at 345 n.12.  However, according to Plaintiff, each of these officers ignored Plaintiff's request for immediate medical treatment while making light of Plaintiff's predicament.  Plaintiff's allegations sufficiently establish that Sergeant Maddox, Sergeant Dugger, Corporal Urhea, and Officer Arisola were aware of the substantial risk of harm

36 / 56

to Plaintiff as a result of his serious injuries but disregarded such risk by not denying him the opportunity for immediate medical care.

Lastly, under *Petzold*, Plaintiff must allege facts sufficient to show that any delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain. *Petzold*, 946 F.3d at 249.  The undersigned finds instructive on this issue the Fifth Circuit's decision in *Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006).   In *Easter*, inmate Easter claimed that prison nurse Gayla Powell acted with deliberate indifference to his serious medical needs. *Easter*, 467 F.3d at 461.  Easter alleged that he had a history of serious heart problems and that a prison doctor had prescribed "nitroglycerin, which is a medication used to prevent chest pain by relaxing the blood vessels to the heart."  *Id.*  According to Easter, the nitroglycerin prescription was effective in reducing his chest pain.  *Id.*  Two days after receiving the prescription, Easter returned to the prison infirmary complaining of chest pain and seeking to have his nitroglycerin prescription filled.  *Id.*  Despite having knowledge of Easter's heart condition, the fact he was experiencing chest pain, and his need to refill his prescription, Powell ultimately sent Easter back to his cell without providing him any treatment such as securing Easter access to the prescribed nitroglycerin medication.  *Id.*  After experiencing four hours of severe pain, Easter returned to the infirmary and was given nitroglycerin by a different medical professional.  *Id.*

The district court granted Powell summary judgment as to Easter's claim that Powell violated his Eighth Amendment right by delaying medical treatment because Easter did not allege that the delay resulted in substantial harm.  *Easter*, 467 F.3d at 461.  The district court, however, denied Powell's summary judgment motion as to Easter's Eighth Amendment claim (and her qualified immunity defense to that claim) for the pain he allegedly suffered during the several hours he was denied treatment.  *Id.*  On appeal, the Fifth Circuit agreed that Powell was

not entitled to summary judgment based on qualified immunity because: (1) "[t]he summary judgment record reflect[ed] that Powell offered no treatment options" to Easter who had a history of cardiac problems and was experiencing chest pain; and (2) evidence was presented in the record that Powell's conduct was not objectively reasonable in light of clearly established law. *Id.* at 465.

Here, similar to the inmate's Eighth Amendment deliberate indifference claim in *Easter* regarding Easter's suffering with chest pain, Plaintiff's allegations focus on the actions of the four defendants who purportedly outright denied Plaintiff's request for immediate treatment which allegedly left him to incur additional extreme pain and discomfort from his serious injuries which were not addressed by the ACDC's medical department with pain medications until the next day. The undersigned finds that these allegations are sufficient to show that the denial of immediate medical treatment resulted in substantial harm to Plaintiff. *See Petzold*, 946 F.3d at 249; *see also Easter*, 467 F.3d at 464-65 ("Even if Easter failed to state an Eighth Amendment violation with regard to the delay in medical treatment, which we need not decide for purposes of the qualified immunity issue on appeal, Easter clearly stated an Eighth Amendment violation with regard to the severe chest pain he suffered during the period of time Powell refused to treat him.").

Accordingly, accepting Plaintiff's allegations as true, the undersigned finds that Plaintiff states Fourteenth Amendment deliberate indifference claims against Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea based on their actions in allegedly denying Plaintiff

medical care following the use of force on August 23, 2022.  The undersigned recommends that such claims be retained against these four defendants in their individual capacities.[1]

### vi.  *Disciplinary hearing and placement in disciplinary segregation.*

Plaintiff alleges that, on August 26, 2022, a disciplinary hearing was held on charges that Plaintiff disrupted the safety, security, and orderly running of the ACDC.  (Doc. No. 17, p. 8.)  Plaintiff claims that Deputy Chapa failed to ensure proper disciplinary procedures and that Lieutenant Martinez failed to follow proper disciplinary procedures.  *Id.* at 10.  Plaintiff further alleges that Sergeant Maddox, Officer Arisola, and Corporal Urhea placed Plaintiff in a disciplinary segregation cell in connection with the disciplinary case, where he remained for 19 days.  *Id*. at 7-8.  Liberally construed, Plaintiff's allegations raise episodic acts or omissions due process claims based on the actions taken by the named defendants.

The Fourteenth Amendment's Due Process Clause prohibits the "punishment" of a pretrial detainee prior to an adjudication of guilt.  *Bell*, 441 U.S. at 535-36; *see also Welsh v. Lubbock Cnty.*, No. 5:19-cv-255, 2022 WL 278550, at *3 (N.D. Tex. Jan. 31, 2022) ("Pretrial detainees, unlike convicts, have a liberty interest in avoiding punishment – an interest that derives from the Constitution itself.").  The Fourteenth Amendment recognizes that "[a] person lawfully committed to pretrial detention has not been adjudicated guilty of any crime."  *Bell*, 441 U.S. at 536.  Pretrial detainees may nevertheless be subjected to "the restriction and conditions of

---

[1]  Plaintiff further alleges that, while he was confined in a disciplinary segregation cell, his request for medical care to address complaints of pain was denied.  (Doc. No. 15, p. 8.)  Plaintiff, however, does not identify when he was denied medical care or the official that denied his request.  He otherwise alleges no specific facts to support this threadbare and conclusory denial-of-medical care claim.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Accordingly, the undersigned recommends that this Fourteenth Amendment deliberate indifference claim be dismissed with prejudice as frivolous and for failure to state a claim upon which relief can be granted.

the detention facility so long as those conditions and restriction do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37.

Pretrial detainees are entitled to procedural due process protections at disciplinary hearings. *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). The Supreme Court has set forth two different standards concerning due process requirement for prison disciplinary proceedings, with each standard depending on the sanctions imposed and the consequences flowing from the sanctions. *Id.* at 563-66; *see also Jackson v. Cain*, 864 F.2d 1235, 1252 (5th Cir. 1989) (recognizing the two standards articulated in *Wolff*). A prisoner punished by solitary confinement and the loss of good time credits is entitled to receive: (1) written notice of the charges against him at least 24 hours before the hearing; (2) a written statement of the fact finders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless such procedures would create a security risk. *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 412 (5th Cir. 1993) (citing *Wolff*, 418 F.3d at 563-66). When the punishment has no effect on parole, such as a short period of administrative segregation, an inmate is entitled to notice and an opportunity to present a statement in an informal nonadversary evidentiary review. *Id.* at 412 (citing *Hewitt v. Helms*, 459 U.S. 460, 473 (1983)).

Here, Plaintiff does not expressly indicate that he was found guilty of any disciplinary violation or whether he received any disciplinary sanctions in connection with the August 26, 2022 hearing. Plaintiff alleges that he was placed in a disciplinary segregation cell where he remained for 19 days. (Doc. No. 17, pp. 7-8.) Even assuming that Plaintiff was found guilty at the August 26, 2022 hearing and placed in disciplinary segregation for 19 days as a punitive measure, he has failed to state a due process violation.

First, Plaintiff does not allege that he was denied: (1) written notice of the charges against him 24 hours before the August 26, 2022 hearing; (2) a written statement of the fact finders as to the evidence relied on and the reasons for any disciplinary action taken; or (3) an opportunity to call witnesses and present documentary evidence in his defense.  Plaintiff's allegations, even accepted as true for purposes of screening, are conclusory and threadbare with regard to Deputy Chapa's and Lieutenant Martinez's denial or failure to ensure proper disciplinary procedures. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  He presents no specific facts to show that he had no opportunity to rebut any of the charges presented at the August 26, 2022 hearing.  *See Hudgins v. Catoe*, No. 6:19cv403, 2020 WL 1861666, at *3 (E.D. Tex. Mar. 13, 2020) ("Due process is satisfied when the inmate was given an opportunity, in accordance with [*Wolff*] to rebut the charges at the disciplinary hearing.").

Further, not every restriction in pretrial detention "amounts to 'punishment' in the constitutional sense." *Bell*, 441 U.S. at 538.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 540.  Jailers should be afforded "the widest possible deference" in classifying detainees, as such deference is necessary "to maintain security and preserve internal order." *Perez v. Anderson*, 350 F. App'x 959, 962 (5th Cir. 2009) (quoting *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008)).

Plaintiff's allegations, at best, suggest that Plaintiff was placed in disciplinary segregation due to the ACDC's interest in maintaining jail security in connection with disciplinary matters. Indeed, "[pretrial] detainees are not immune from prison disciplinary actions." *Guillory v. Neustrom*, No. 09-0244, 2009 WL 2406302, at *3 (W.D. La. Aug. 3, 2009) (citing *Frank v.*

41 / 56

*Larpenter*, 234 F.3d 706 (5th Cir. 2000) (Table)); *see also Scott v. Lemdke*, No. A-18-CA-610-LY, 2018 WL 4664138, at *2 (W.D. Tex. Sep. 28, 2018).  Even liberally accepting Plaintiff's 19-day stay in a disciplinary segregation cell as a punitive measure, Plaintiff's allegations indicate that jail officials imposed such a sanction on him for violating the disciplinary rules regarding the disruption of safety, security, and orderly running of the ACDC and not as punishment for the underlying crimes with which he was charged in Aransas County.  *See Guillory*, 2009 WL 2406302, at *3 (recognizing that "prison officials may impose punishment to enforce reasonable disciplinary requirements so long as the punishment is not for prior unproven [criminal] conduct").

Plaintiff otherwise provides nothing to show he had any liberty interest in being housed in general population during the 19 days he spent in a disciplinary segregation cell or that his placement in disciplinary confinement violated his due process rights.  *See Aucoin v. Terrebonne Par. Sheriff's Office*, No. 21-110, 2021 WL 2080212, at *13 (E.D. La. Apr. 27, 2021), *adopted*, 2021 WL 2075405 (E.D. La. May 24, 2021) ( "[a] prisoner's temporary placement in a restricted cell … as punishment for disciplinary violations are 'merely changes in the conditions of his confinement and do not implicate due process concerns'") (quoting *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)).  Accordingly, the undersigned recommends that Plaintiff's episodic acts or omissions due process claims based on the disciplinary procedures afforded him in connection with his August 26, 2022 disciplinary hearing and his 19-day placement in disciplinary segregation be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### vii. *Replacement of new blue mat with old green mat.*

Plaintiff alleges that, while he was confined in a disciplinary segregation cell following the alleges use of excessive force, Deputy Chapa ordered Lieutenant David and Corporal Fincher to remove Plaintiff's brand-new blue mat and to replace it with a ten-year old green mat that oozed a yellow oil and reeked with a foul order of sweat and urine.  (Doc. No. 15, p. 8; Doc. No. 17, p. 9.)  Plaintiff alleges that he was injured because the replacement mat interrupted his treatment by exposing him to unnecessary biohazards.  (Doc. No. 17, p. 9.)   Liberally construed, Plaintiff's allegations are raising episodic acts or omissions due process claims based on Deputy Chapa's order to change Plaintiff's mat in his disciplinary segregation cell.

Plaintiff's allegations, accepted as true for purposes of screening, fail to satisfy either the objective or subjective prong of the deliberate indifference test.  Plaintiff fails to set forth any specific facts to show that the replacement of his new blue mat with an old, allegedly unsanitary green mat exposed him to a further risk of pain and injury associated with any serious physical issue.  Rather, Plaintiff alleges merely that he was exposed to unnecessary "biohazards." Plaintiff, however, provides no specific facts to indicate that he was exposed to any specific biohazard or otherwise show he was physically injured by using the older green mat.  Plaintiff's allegations, therefore, fail to suggest he was exposed to a substantial risk of serious harm through removal of his blue mat by Lieutenant David and Corporal Fincher under Deputy Chapa's order.

Moreover, Plaintiff's allegations fail to show that either Deputy Chapa, Lieutenant David, or Corporal Fincher had subjective knowledge that Plaintiff faced a substantial risk of harm in the form of a specific biohazard contained on the green mat and consciously disregarded such risk through their actions.  *Valentine*, 993 F.3d at 281.  At best, Plaintiff's allegations show that their actions in replacing a brand-new mat with an old yellow-stained and foul-smelling green

mat amounted to a negligent or grossly negligent response to a substantial risk of serious harm. *See Farmer*, 511 U.S. at 838 *Thompson*, 245 F.3d at 459.

Accordingly, the undersigned recommends that Plaintiff's episodic acts or omissions due process claim against Deputy Chapa, Lieutenant David, and Corporal Fincher in their individual capacities, based on their actions in allegedly removing Plaintiff's new blue mat and replacing it with an older green mat, be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### viii.  Installation of camera.

Plaintiff alleges that Lieutenant David violated his rights by installing a camera in his disciplinary segregation cell.  (Doc. No. 17, p. 11.)  Plaintiff's allegation as to this claim is threadbare and conclusory.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Plaintiff offers no allegation to indicate that he was injured or otherwise exposed to a substantial risk of serious injury due to Lieutenant David's action.  As Plaintiff provides no basis to support a constitutional claim, the undersigned recommends that that Plaintiff's episodic acts or omissions due process claim against Lieutenant David in his individual capacity be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### ix.  Pattern of harassment and abuse.

Plaintiff alleges that Sergeant Maddox has engaged in a campaign of abuse and harassment against Plaintiff and that Sheriff Mills and Chief Gutierrez have allowed a pattern of abuse and harassment.  (Doc. No. 17, p. 10-11.)  Plaintiff offers only threadbare and conclusory allegations regarding these claims.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff provides nothing to distinguish this claim from his numerous other claims or suggest that he suffered a separate injury arising from an alleged campaign or pattern of abuse and

harassment.  Furthermore, to the extent Plaintiff's allegations may refer to verbal threats, abusive language, or other such harassment by ACDC officials, such conduct does not amount to a constitutional violation.  *See Mooring v. Paine*, No. 5:21-CV-028-BQ, 2021 WL 7278958, at *11 (N.D. Tex. Oct. 29, 2021); *see also Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that "claims of verbal abuse are not actionable" constitutional claims); *Robertson v. Plano City of Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (concluding that verbal threats and harassment do not rise to the level of a constitutional violation).

Accordingly, the undersigned recommends that Plaintiff's episodic acts or omissions due process claims based on a campaign or pattern of harassment and abuse be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### c. *Conditions of confinement claims.*

#### i. *Disciplinary segregation cell.*

Plaintiff alleges that the disciplinary segregation cell, in which he was confined for 19 days, was bloodstained and raining heavy condensation directly on his bunk.  (Doc. No.15, pp. 7-8; Doc. No. 17, p. 8.)  Plaintiff further alleges that the cell had "blood and boogers on the bunk, matted clumps of hair in the shower, clogged drain, no cold water, [and] feces."  (Doc. No. 17, p. 8).  Plaintiff states that he was exposed to "unnecessary" but unspecified biohazards and was forced to sleep with water raining down on him while he was in extreme pain from the use of excessive force.  *Id.* at 9.  Because these allegations reference the general conditions of his confinement in disciplinary segregation, the undersigned construes them as conditions of confinement claims.

The Fourteenth Amendment entitles pretrial detainees to be free from punishment and to be provided with basic human needs, such as food, water, clothing, medical care, and safe

conditions. *See Hare*, 74 F.3d at 639, 650. Such basic needs constitute "humane conditions of confinement" required under the Eighth Amendment, which are applicable to pretrial detainees through the Fourteenth Amendment. *Id.* at 649. However, deprivation of a basic need violates an inmate's constitutional rights only when the deprivation is so serious as to amount to a denial of "the minimal civilized measure of life's necessities." *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Whether a deprivation fails to pass the minimal civilized measure of life's necessities threshold "depends on the amount and duration of the deprivation." *Talib*, 138 F.3d at 214 n.3. This inquiry requires evaluating the extent to which the plaintiff experienced the deprivation, for how long, and the injury arising therefrom. *See Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999); *Lockamy v. Rodriguez*, 402 F. App'x 950, 951 (5th Cir. 2010).

Plaintiff's allegations, accepted as true for purposes of screening, reflect that his confinement in the disciplinary cell was temporary. *See Mitchell v. Denton Cnty.*, No. 4:18-cv-399-ALM-KPJ, 2022 WL 989392, at *9 (E.D. Tex. Feb. 28, 2022), *adopted*, 2022 WL 987819 (E.D. Tex. Mar. 31, 2022) (recognizing that detainee's three-week confinement in an isolation cell was "temporary" in the constitutional sense). While describing rather unpleasant alleged conditions in his disciplinary segregation cell, Plaintiff fails to allege facts to suggest that the conditions in his cell deprived him of basic needs amounting to a denial of the "minimal civilized measure of life's necessities." *See Wilson*, 501 U.S. at 298. Plaintiff fails to identify any specific biohazards to which he was exposed or how such biohazards caused him injury. Plaintiff likewise provides no facts to indicate that he suffered any physical injuries requiring medical attention solely due to the conditions of his confinement present in the disciplinary

segregation cell.  Rather, Plaintiff's allegations only indicate that he was suffering from extreme pain in connection with the alleged use of excessive force on August 23, 2022.

Each conditions of confinement of case is fact-specific, and Plaintiff's claim pertaining to the conditions in his disciplinary segregation cell does not allege the sort of unhealthy conditions or deprivation of the "minimal civilized measure of life's necessities" necessary to allege a viable constitutional violation.  *Compare Pomier v. Leonard*, 532 F. App'x 553, 554 (5th Cir. 2013) (finding no constitutional violation where inmate complained of no power at the jail for five days, inability to use toilet to defecate for three days, inability to shower for seven days with cold showers only for the next seven days, toilets being filled with feces and urine for 13 days, and no clean water of three days); *Mitchell*, 2022 WL 989392, at *8-9 (finding no constitutional violation where inmate complained of being placed in isolation cell for three weeks in which the cell remained illuminated 24 hours a day, had no working plumbing, the shower never drained, and the "toilet regurgitated human excrement flushed from elsewhere in the facility") *with Gates v. Cook*, 376 F.3d 323, 333-36 (5th Cir. 2004) (recognizing that there was an Eighth Amendment violation where death row inmates were subjected for long durations of time to filthy cells with chipped and peeling paint, dried fecal matter and food encrusted on the walls, water from flooded toilets and rain leaks, inadequate lighting, lack of heating and cooling, foul-smelling laundry, and pest infestations).

Accordingly, the undersigned recommends that Plaintiff's conditions-of-confinement claims relating to the conditions of his disciplinary segregation cell be dismissed with prejudice as frivolous or for failure to state a claim upon which relief can be granted.

### ii. *Holding cell.*

Plaintiff alleges that, immediately after the use of force, he was "thrown" into an unsanitary holding cell and exposed to biohazards. (Doc. No. 15, p. 7.) Plaintiff further alleges that the holding cell contained feces and had trash where there was supposed to be a toilet. (Doc. No. 17, p. 8) According to Plaintiff, he was left in the holding cell for three hours, though he was eventually given a "pickle bucket" with water to rinse his face. (Doc. No. 15, p. 8; Doc. No. 17, p. 8.) Lastly, Plaintiff, alleges that he suffered from pain in the holding cell and a bruised wrist that cut circulation to his wrist and hand. (Doc. No. 17, p. 8.) Because these allegations reference the general conditions of his confinement in the holding cell, the undersigned construes them as conditions of confinement claims.

Plaintiff's allegations, accepted as true for purposes of screening, reflect that his confinement in the holding cell was temporary. *See Mitchell*, 2022 WL 989392, at *9. Plaintiff's allegations fail to indicate that he was deprived of the "minimal civilized measure of life's necessities" during the short duration he spent in the holding cell or that the conditions present in the holding cell, where he stayed for only three hours, amounted to more than a "*de minimis* level of imposition[,]" such that the conditions were not punishment. *See Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). Further, Plaintiff's temporary exposure to unsanitary conditions in the holding cell, while unpleasant, are not so egregious as to rise to the level of a constitutional violation. *See Presley v. Sanders*, No. 1:14CV130-MTP, 2016 WL 6651375, at *3 (S.D. Miss. Nov. 10, 2016) (recognizing that there is no constitutional violation when inmates spend relatively short periods of time in unsanitary conditions).

Plaintiff likewise provides no facts to indicate that he suffered any physical injuries requiring medical attention solely due to the conditions of his confinement in the holding cell.

48 / 56

Rather, Plaintiff's allegations indicate that he suffered pain, a bruised wrist, and circulation issues with his wrist and hand due to the alleged use of excessive force on August 23, 2022. Accordingly, the undersigned recommends that Plaintiff's conditions of confinement claims relating to the conditions of his holding cell be dismissed with prejudice as frivolous or for failure to state a claim upon which relief can be granted.

### 6. *Plaintiff's claims relating to the grievance process should be dismissed with prejudice.*

Plaintiff alleges that: (1) Sheriff Mills and Chief Gutierrez have failed to provide a functional grievance procedure which allows for a pattern of abuse, harassment, and retaliation; (2) Chief Gutierrez failed to respond to Plaintiff's grievances; (3) Deputy Chapa has failed to follow grievance procedures; (4) Sheriff Mills, Deputy Chapa, and Lieutenant Martinez responded to Plaintiff's grievances by attacking Plaintiff's character and rejecting them as baseless and frivolous; and (5) Deputy Chapa and Lieutenant Martinez denied all of Plaintiff's grievances pertaining to bedding, removal of his personal clothing, and denial of cleaning supplies.  (Doc. No. 17, pp. 4, 9-10.)

Plaintiff's allegations, accepted as true for purposes of screening, fail to state a constitutional claim with respect to the grievance process and disposition of his grievances.  A prisoner does not have a constitutional right to a grievance procedure at all.  *Staples v. Keffer*, 419 F. App'x 461, 463 (5th Cir. 2011) (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)).  And a prisoner certainly does not have any federally protected liberty interest in having grievances resolved to his or her satisfaction.  *See Geiger*, 404 F.3d at 374 (because "[plaintiff] does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction . . . any alleged due process violation arising from the alleged failure to investigate

his grievances is indisputably meritless.").  Plaintiff, therefore, fails to state any constitutional

claim against Sheriff Mills, Chief Gutierrez, Deputy Chapa, and Lieutenant Martinez regarding

the adequacy of the grievance procedures afforded to Plaintiff and their respective failures to

answer and resolve Plaintiff's grievances in his favor.

Accordingly, the undersigned recommends that Plaintiff's due process claims regarding

the grievance process against Sheriff Mills, Chief Gutierrez, Deputy Chapa, and Lieutenant

Martinez in their individual capacities be dismissed with prejudice as frivolous or for failure to

state a claim for relief upon which relief may be granted.

### 7. *Plaintiff's retaliation claims should be dismissed with prejudice.*

Plaintiff claims that Deputy Chapa and Lieutenant Martinez have retaliated against him

for writing grievances by discouraging Plaintiff from filing additional grievances.  (Doc. No. 17,

p. 10.)

"Retaliation" is not expressly referred to in the Constitution; however, it is nonetheless

actionable because retaliatory actions may tend to chill an individual's exercise of constitutional

rights.  *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).  Retaliation is actionable "only if the

retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his

constitutional rights.'"  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v.

Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

"A prison official may not retaliate against or harass an inmate for exercising the right of

access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v.

Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  "Filing grievances and otherwise complaining about

the conduct of correctional officers through proper channels are constitutionally protected

activities, and prison officials may not retaliate against inmates for engaging in such protected

inmates." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). Mere assertions of an inmate's personal belief that he is the victim of retaliation or conclusory allegations do not create a valid claim for relief. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997); *Woods*, 60 F.3d at 1166. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* On the element of causation, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Id.*

Here, Plaintiff offers only threadbare and conclusory statements offering his personal belief that he is a victim of what he perceives to be retaliation. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Johnson*, 110 F.3d at 310. Simply put, Plaintiff offers no factual allegation that could plausibly support a finding of retaliatory intent or causation on the part of

51 / 56

either Deputy Chapa or Lieutenant Martinez.  In fact, Plaintiff does not even provide a timeline

of events with respect to the filing of his grievances or otherwise indicate with specific facts how

he was discouraged from filing grievances.  Because Plaintiff's retaliation claims are threadbare

and conclusory, the undersigned recommends that these claims against Deputy Chapa and

Lieutenant Martinez in their individual capacities be dismissed with prejudice as frivolous or for

failure to state a claim upon which relief can be granted.

### 8.  *Plaintiff's equal protection claims should be dismissed with prejudice.*

Plaintiff claims that Deputy Chapa and Lieutenant Martinez denied Plaintiff equal

protection.  (Doc. No. 17, p. 11.)  The Equal Protection Clause of the Fourteenth Amendment

"commands that no State shall deny to any person within its jurisdiction the equal protection of

the laws, which is essentially a direction that all persons similarly situated should be treated

alike." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation

marks and citations omitted); *see Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016).  To

establish an Equal Protection Clause violation, a plaintiff must prove "purposeful discrimination

resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d

571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted); *Baranowski v. Hart*,

486 F.3d 112, 123 (5th Cir. 2007).

Under a "class of one" equal protection claim, a plaintiff alleges differential treatment

that is not based on membership in a suspect class or on the infringement of a fundamental right.

*See Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 594 (2008); *Wood*, 836 F.3d at 539.  Such a

claim requires the plaintiff to show that "(1) he or she was intentionally treated differently from

others similarly situated and (2) there was no rational basis for the difference in treatment." *Id.*

(internal quotation marks and citation omitted).  The plaintiff must show "that the defendant

deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position."  *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 328–29 (5th Cir. 2002)).  "'[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws.'"  *Little v. Tex. Attorney Gen.*, No. 3:14-CV-3089-D, 2015 WL 5613321 at *6 (N.D. Tex. Sept. 24, 2015) (quoting *Johnson*, 110 F.3d at 306).

Here, even construed liberally, Plaintiff presents a "class of one" equal protection claim. Plaintiff's allegations, accepted as true for purposes of screening, are wholly threadbare and conclusory.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  In fact, Plaintiff's sole allegation is that Deputy Chapa and Lieutenant Martinez denied him equal treatment.  He alleges no specific facts to indicate that he was treated differently than any other similarly situated ACDC inmate or that his treatment was classified or distinguished in any way from other similarly situated inmates.  Because Plaintiff's equal protection claims are threadbare and conclusory, the undersigned recommends that these claims against Deputy Chapa and Lieutenant Martinez in their individual capacities be dismissed with prejudice as frivolous or for failure to state a claim upon which relief can be granted.

### 9. Plaintiff's claims against Sheriff Mills in his supervisory capacity should be dismissed with prejudice.

Plaintiff alleges that Sheriff Mills, as the person responsible for actions of his subordinate employees, has failed to protect Plaintiff and provide him with a functioning grievance procedure, due process, medical treatment, and decent conditions.  (Doc. No. 17, p. 10.)

As recognized above, "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under § 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (Werlein, J) (citing *Iqbal*, 556 U.S. at 677).

With the exception of his allegations pertaining to Sheriff Mills' alleged participation in the grievance process and campaign of abuse and harassment, as discussed above, Plaintiff alleges nothing to suggest that Sheriff Mills had any personal involvement in connection with any actions allegedly taken by his subordinate employees to deny him due process, medical treatment, or decent living conditions. Plaintiff otherwise alleges no specific facts to indicate that Sheriff Mills engaged in any behavior to create supervisory liability. Accordingly, the undersigned recommends that Plaintiff's claims against Sheriff Mills in his supervisory capacity be dismissed with prejudice as frivolous or for failure to state a claim upon which relief can be granted.

### E. Conclusion and recommendation.

The undersigned recommends that the district court:

- **DISMISS without prejudice** Plaintiff's claims against Head Nurse Heather, Corporal Cooper; Officer Sorteors, Officer Mendoza, Sergeant Lopez, Sergeant Tober, Corporal Roe, Officer Alvarado, and John Doe, and against all other defendants in their official capacities;

- **DISMISS with prejudice** Plaintiff's § 1983 claims seeking criminal charges to be brought against those defendants who allegedly assaulted him;

- **RETAIN** Plaintiff's Fourteenth Amendment excessive force claims against Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea in their individual capacities;

- **RETAIN** Plaintiff's Fourteenth Amendment episodic claim regarding the denial of medical care on August 23, 2022 against Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea in their individual capacities; and

- **DISMISS with prejudice** Plaintiff's remaining § 1983 claims against Sheriff Mills, Chief Gutierrez, Deputy Chapa, Lieutenant Martinez, Lieutenant David, Sergeant Maddox, Sergeant Dugger, Corporal Fincher, Corporal Urhea, Sergeant Andride, and Officer Arisola in their individual capacities as frivolous or for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

The undersigned will order service separately on Sergeant Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urhea with respect to the claims retained in this case.

### F. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States magistrate judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas. A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on August 20, 2023.

MITCHEL NEUROCK
United States Magistrate Judge