Case 2:22-cv-00299   Document 100   Filed on 07/18/25 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
July 18, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DALE HAVENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00299 |
| | § | |
| BILL MILLS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendants' motion for summary judgment based on qualified immunity. D.E. 77. On March 3, 2025, United States Magistrate Judge Mitchel Neurock issued his "Memorandum and Recommendation of United States Magistrate Judge." M&R, D.E. 93. The Magistrate Judge recommends that the motion be granted in part and denied in part. Plaintiff and Defendants timely filed their objections (D.E. 95, 97). The Court considers each party's objections.

## STANDARD OF REVIEW

The district court conducts a de novo review of any part of a magistrate judge's disposition that has been properly objected to. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419,

421 (5th Cir. 1987) (per curiam) (discussing pro se petitioner's objections to M&R), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)). As to any portion for which no objection is filed, a district court reviews for clearly erroneous factual findings and conclusions of law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam).

## DISCUSSION

### I. Plaintiff's Objections

Plaintiff first objects to the Magistrate Judge's statement that Plaintiff did not respond to Defendants' motion for summary judgment, claiming this is untrue. D.E. 95, p. 1. While there is no response to the motion on record, Plaintiff's amended complaint and questionnaire answers include a signed declaration under penalty of perjury stating that the foregoing pleadings are true and correct, and therefore these serve as relevant summary judgment evidence that the Court may consider. D.E. 44, 46; *see Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("[Plaintiff], however, attached to his original complaint a signed declaration under penalty of perjury that 'the foregoing is true and correct.' On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."). The Magistrate Judge's observation regarding a lack of a response as well as his consideration of Plaintiff's summary judgment evidence were accurate and proper. The objection is **OVERRULED**.

Plaintiff next contends that Defendants have submitted edited video without audio, which Plaintiff has not had the opportunity to inspect, and which he represents as inaccurate

or altered. D.E. 95, p. 1. He also states that there is missing evidence not considered, related to grievances, witness statements, medical records, and request forms. *Id.* at p. 2. However, the video evidence is supported by other summary judgment evidence, including declarations with a perjury clause from Sheriff Bill Mills, Deputy Chief Armando Chapa, and Sergeant Miles Dugger, as well as post-incident reports. *See* D.E. 77-1, 77-3, 77-5, 77-6, 77-7. Plaintiff could have requested additional time to respond with additional evidence if he required it. His protestations that the evidence, which he has not reviewed, is inaccurate are without evidentiary basis. This objection is **OVERRULED**.

### A. Excessive Force Claim

The Magistrate Judge recommends granting summary judgment on the excessive force claim because the evidence shows that the officers' conduct during the relevant event did not amount to a constitutional violation. D.E. 93, p. 32. The Magistrate Judge thoroughly analyzed the *Kingsley* factors to assess the reasonableness of the force used. *Id.* at pp. 32-36; *see Kingsley v. Hendrickson*, 576 U.S. 389 (2015).

Plaintiff objects to this recommendation, analyzing the *Kingsley* factors himself to assess whether the use of force was reasonable. D.E. 95, p. 6-10. Plaintiff points to what he contends to be inaccuracies in the video evidence, including that the video does not show that he was dragged, the use of force lasted more than two minutes, an officer kneeled on his throat, and Officer Arisola spit chewing tobacco on him. D.E. 95, p. 3.

Plaintiff also objects to the Magistrate Judge's interpretation of the video evidence from the isolation cell, stating that he was carried and then dropped which damaged his back,

and that he had the weight of the officers press down on him while a female guard kicked his legs. D.E. 95, p. 4. He states that he was in extreme pain and had difficulty breathing, all while he remained handcuffed. *Id.* Plaintiff states that he was not struggling, rather he had an asthma attack and fainted, and he alerted the officers to his need for medical attention, which was denied. *Id.* He states that the Magistrate Judge failed to observe his arms being hyperextended and pulled, causing pain to his shoulders. *Id.* He also states that though he was given a bucket of water to rinse off the OC spray (pepper spray), it was insufficient to rinse off the spray. *Id.* at p. 5. Plaintiff states that he received a positive diagnosis for chronic and severe eczema a year later, which was attributed to the OC spray that covered his body for three to four hours. *Id.* Plaintiff also challenges the finding that he is a combative inmate. *Id.* at p. 9.

In sum, Plaintiff objects to the finding that there was no unconstitutional use of force and objects to the recommendation to grant qualified immunity to Defendants on this claim. D.E. 95, p. 5. He argues that the missing audio of the video recordings has made it difficult for the Court to ascertain whether the amount of force used against him was objectively unreasonable. *Id.*[1]

A pretrial detainee has the right to be free from excessive force. *Kingsley,* 576 U.S. at 395 (analyzing pretrial detainee's excessive use of force claim). To establish an excessive force claim, a pretrial detainee must show "that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. In order to determine whether use of force

---

[1] Additional objections by Plaintiff, such as his statements that he was being moved to solitary confinement without a hearing and that this act was retaliatory (D.E. 95, pp. 8, 9), are the subject of different causes of action.

was unreasonable, courts must consider several factors, which include: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 397. The Court analyzes each factor in turn.

Regarding the first *Kingsley* factor—the relationship between the need for force and amount of force used—it appears from the video evidence that Plaintiff was asked to exit the cell and refused, prompting the use of OC spray and the subsequent altercation with the officers. *See* Ex. 2-E. When the officers first step into the cell, they motion to Plaintiff to step out, seen clearly as an officer gestures toward the door with his arm. *Id.* at 22:39:43. Plaintiff refuses to move, thereby prompting the use of some degree of force by the officers. *See Sanchez v. Griffis*, 569 F. Supp. 3d 496, 510 (W.D. Tex. 2021), *aff'd,* No. 21-51160, 2023 WL 7984732 (5th Cir. Nov. 17, 2023) (collecting cases to show that officials are justified in using some degree of force when a prisoner refuses to cooperate with an officer's legitimate directives). This factor weighs in favor of finding that the officer's use of force was reasonable.

The second factor—the extent of Plaintiff's injury—is disputed. The video evidence does not show Plaintiff being injured disproportionately to the amount of force used, as he is seen moving about the isolation cell freely and without noticeable injuries after the altercation. *See* Ex. 2-F. However, Plaintiff was pepper-sprayed and spent nearly ten minutes trying to

wash the spray off. *See* Ex. 2-E, 2-F. Additionally, Plaintiff and the officers are out of the frame for a brief portion of the video so the officers' actions cannot be seen during this time. Ex. 2-E at 22:41:04-22:41:17. Plaintiff claims that he was elbowed in the face and back of the head, punched in the face and stomach, kneed on his side, and his feet and legs were stepped on. D.E. 44, pp. 6-7. He states that he had so much weight on him that he could not breathe properly, and he blacked out at some point during this event. *Id*. at p. 7. He states that he was in extreme pain and could not turn his neck properly afterward. *Id.* at pp. 7-8. Due to the injuries described by Plaintiff, this factor weighs in favor of finding that the use of force was unreasonable.

Regarding the third factor—efforts made by the officers to temper or limit the amount of force—the multiple incident reports (D.E. 77-5) describe that the officers only attempted to do what was necessary to obtain Plaintiff's compliance and escort him out of the cell. The video evidence also demonstrates this—once the officers were able to place Plaintiff on the ground face down to handcuff him, they stood him up and escorted him out of the cell. Ex. 2-E at 22:41:24. This factor weighs in favor of finding that the use of force was reasonable.

The fourth factor—the severity of the security problem at issue—weighs in favor of finding that the use of force was unreasonable. There is no evidence regarding any particular incident occurring at the time of the event, and though Plaintiff was resisting orders, he did not appear to be lashing out in a threatening way. He did not react menacingly to the OC spray. He merely wiped it from his face while continuing to stand in the same location before the officers converged on him, at which point he began to physically resist. Ex. 2-E at 22:40:56.

The video does not demonstrate that Plaintiff was posing a particularly dangerous security problem. This factor favors a finding of unreasonable use of force.

The fifth factor—the threat reasonably perceived by the officer—weighs in favor of finding that the use of force was reasonable. As Sheriff Mills's affidavit states, Plaintiff was known as a verbally and physically combative detainee. D.E. 77-1, p. 1. This reputation, combined with the fact that Plaintiff was refusing to follow orders, demonstrates that the officers did not unreasonably respond to the perceived "threat" of obtaining Plaintiff's compliance.

The sixth and final factor—whether Plaintiff was actively resisting—is answered in the affirmative. From the video evidence, Plaintiff had to be pepper-sprayed, and once officers converged on him, it took a few moments before they were able to place him face down on the ground with his arms behind his back to handcuff him. *See* Ex. 2-E at 22:40:54-22:42:55. This factor weighs in favor of finding that the use of force was reasonable.

On balance, the majority of the *Kingsley* factors—factors one, three, five, and six—weigh in favor of finding that the use of force during this event was reasonable. Plaintiff's objection is **OVERRULED**.

### B. Denial of Medical Care

The Magistrate Judge recommends granting Defendant's summary judgment regarding Plaintiff's claim that he was denied medical care after the use of force incident because Plaintiff failed to show a severe injury that the officers knew about and that Defendants responded to his medical needs with deliberate indifference. D.E. 93, pp. 36-37.

Plaintiff objects to this finding, stating that he experienced more force than that depicted in the video and that he was not treated by a medical professional or given adequate medical care. D.E. 95, p. 10. He repeats his claim that the videos in evidence have been doctored. *Id.* at p. 11.

To state a claim for an episodic act or omission for the unconstitutional denial of medical care, a plaintiff must show that an officer "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). To establish that officials responded with deliberate indifference, a plaintiff must show that officials "refused to treat [plaintiff], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 711 (5th Cir. 2023) (quoting *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017)), *cert. denied*, 144 S. Ct. 1010 (2024).

The available summary judgment evidence does not show that the officers responded to Plaintiff's medical problems with deliberate indifference. Approximately ten minutes after Plaintiff was placed in the isolation cell, officers came in to take Plaintiff's blood pressure and to leave a bucket of water. D.E. 2-F at 22:53:44. The attempt to check the blood pressure lasted approximately four minutes and was not successful. *See* Ex. 2-F; D.E. 77-5, p. 3. Plaintiff then washed his face with the water for several minutes. *Id.* The video has no audio so there is no evidence regarding what Plaintiff may have stated as to his injuries.

While Defendants may have had knowledge of a substantial risk of serious harm to Plaintiff following the altercation depicted in Exhibit 2-E, the video evidence demonstrates that they did not act with deliberate indifference. Minutes after his placement in the isolation cell, officers attended to Plaintiff and provided him with a bucket of water to wash off the OC spray. This conduct does not clearly evince a wanton disregard for Plaintiff's medical needs. Plaintiff cannot demonstrate that there was deliberate indifference. Thus, Plaintiff's objection is **OVERRULED**.

### C. Retaliation: Solitary Confinement (June 2023 Incident)

The Magistrate Judge recommends granting summary judgment for Defendants on Plaintiff's retaliation claim regarding placement in solitary confinement because Plaintiff did not establish a constitutional violation. D.E. 93, p. 47. Plaintiff objects, stating that he was not given the opportunity to have a hearing on this issue, and that the officers, taking orders from Deputy Chief Chapa, planned to document that he had refused a hearing in order to keep him in solitary confinement. D.E. 95, p. 13.

This claim stems from Plaintiff's 20-day disciplinary confinement due to a June 19, 2023 incident. *See* D.E. 46, p. 10; D.E. 77-6. According to Deputy Chief Chapa's affidavit, Plaintiff had been constantly pushing the intercom button and alerting to an emergency when there was not one. D.E. 77-3, p. 2. Officers served Plaintiff with a Discipline Procedure and Notice Form, which he did not sign, and the officers deemed this a waiver of a disciplinary hearing. *Id.* Plaintiff claims that he was placed in solitary confinement in retaliation for filing a grievance or this lawsuit. D.E. 46, p. 10.

A claim for retaliation requires that a plaintiff establish: (1) the exercise of a specific constitutional right, (2) a defendant's intent to retaliate for the exercise of the right, (3) a retaliatory act, and (4) causation. *Baughman v. Seale*, 761 F. App'x 371, 382 (5th Cir. 2019) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). To prove the causation element, a "plaintiff must establish that but for the retaliatory motive, the defendants' act of retaliation would not have occurred." *Id.* (citing *McDonald*, 132 F.3d at 231).

Plaintiff has failed to establish the causation element. He is able to "allege a chronology of events from which retaliation may plausibly be inferred," *id.* (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), because the solitary confinement occurred shortly after the June 19, 2023 incident, for which Plaintiff was written up for conduct that disrupts the safety and security of the facility (D.E. 77-6). However, the reports make clear that Plaintiff would have faced this disciplinary action, even in the absence of any retaliatory motive, because his actions in alerting to a false emergency had disrupted the safety and security of the facility. *See* D.E. 77-6. Because Plaintiff pled a retaliation claim, not a due process claim for lack of a hearing regarding this incident, and the causation prong cannot be established, Plaintiff's objection is **OVERRULED**.

### D. Additional Objections

Plaintiff makes additional comments and objections that do not directly address the M&R. First, he states that his claim for denial or confiscation of medical passes and mats should include additional defendants. D.E. 95, p. 11. The Court has previously addressed this objection and will not address it further. *See* D.E. 35, p. 14; D.E. 81, p. 4. It is **OVERRULED**.

Next, Plaintiff provides further statements and information regarding his prehearing detention, the disciplinary hearing, and the retaliation claim for being transferred to the Kleberg County jail. D.E. 95, pp. 12-13. These do not appear to be specific objections to the M&R and are not analyzed further. *See Battle*, 834 F.2d at 421 ("Parties filing objections must specifically identify those findings objected to."). The objections are **OVERRULED** as improper or insufficient.

## II. Defendants' Objections

### A. Three Strikes Rule

Defendants first object by stating that Plaintiff has filed three cases in which a magistrate judge has recommended dismissal, and he is therefore subject to the three strikes rule. D.E. 97, p. 3. This argument was not brought before the Magistrate Judge in the first instance and has been waived. *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998). Moreover, the M&Rs in those cases have not yet been adopted by the district court and the cases have not been counted as strikes for purposes of 28 U.S.C. § 1915(g) or been noticed to the Manager of the Three Strikes List for the Southern District of Texas. Furthermore, those cases were filed after the present case was filed. *See Porter v. Lemire*, No. 24-504, 2024 WL 5006296 (E.D. La. Aug. 16, 2024), adopted, 2024 WL 4719507 (Nov. 8, 2024) ("the PLRA's three strikes rule is one to be applied at the time suit is filed, when the court considers the application to proceed *in forma pauperis*."). Defendants' objection is **OVERRULED**.

### B. Failure to Respond to Motion

Defendants next object to Plaintiff's failure to respond to the summary judgment motion, stating that this failure should be taken as no opposition pursuant to Local Rule 7.4, and the motion should be granted in its entirety. D.E. 97, p. 3.

"[S]ummary judgment may not be awarded by default 'simply because there is no opposition, even if the failure to oppose violated a local rule.'" *Howe v. Adams*, No. 3:14-CV-349, 2018 WL 1427175, at *3 (S.D. Tex. Mar. 22, 2018) (quoting *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)). Defendants' objection is **OVERRULED**.

### C. Clearly Established Law

Defendants object that the law was not clearly established that any of their conduct violated Plaintiff's constitutional rights. D.E. 97, p. 4. They note that Plaintiff did not respond to the summary judgment motion or identify a case demonstrating that Defendants' actions violated clearly established law. *Id*. They state that once they pled qualified immunity, the burden shifted to Plaintiff to rebut the defense. However, the M&R incorrectly places the burden on Defendants to show that the law is not clearly established. *Id.* at pp. 4-5.

Some portions of the M&R might be construed as placing the burden on Defendants to establish a lack of clearly established law. *See* D.E. 93, pp. 39-40, 42 ("While these defendants argue that they are entitled to qualified immunity on 'all constitutional claims made against them,' they do not offer any specific argument in support of their qualified immunity claim."). However, the Magistrate Judge properly applied clearly established law

to Plaintiff's evidence, and the Court further delineates the clearly established law on a claim-by-claim basis in the sections below.

Defendants' objection is **OVERRULED**.

### D. Denial or Confiscation of Medical Passes

The Magistrate Judge recommends denying Defendants' motion on the deliberate indifference claim regarding the denial or confiscation of medical passes, finding that Plaintiff met the burden of showing an issue of material fact regarding Deputy Chief Chapa's conduct and whether the conduct violated clearly established law. D.E. 93, p. 38.

Defendants object that the evidence conclusively establishes that Chapa did not confiscate Plaintiff's mattress or blanket, and did not deny him medical passes or bottom bunk privileges. D.E. 97, p. 5. Instead, the evidence shows that these actions were taken by Officer Arisola. *Id*. In any event, Defendants argue that the law is not clearly established that Chapa's alleged conduct violated Plaintiff's constitutional rights. *Id.* at pp. 5-6.

Under the Fourteenth Amendment, the state has a duty to provide for a detainee's basic human needs, including medical care. *Hare*, 74 F.3d at 639 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). This is a clearly established constitutional right and interference with prescribed medical treatment can rise to deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . [t]his is true whether the indifference is manifested by . . . prison guards in intentionally

denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." (internal quotations omitted)).

Deputy Chief Chapa states in his affidavit that he did not confiscate Plaintiff's medical passes and double mattress, and that he was not aware of Plaintiff's double mattress being removed. D.E. 77-3, pp. 1-2. In his complaint, Plaintiff states that Chapa confiscated his passes, and claims, in his questionnaire, that he spoke directly to Chapa about his medical needs. Thus, Chapa was aware of the need for the passes and the extra mattress. D.E. 44, p. 9; D.E. 46, p. 3. The summary judgment evidence shows that Plaintiff had a medical pass that authorized him to have an additional mattress. *See* D.E. 46-1, p. 4. Whether Chapa actually denied Plaintiff's passes is a fact question that cannot be decided through summary judgment. Defendants' objection is **OVERRULED**.

### E. Prehearing Segregation Prior to the August 2022 Disciplinary Hearing

The Magistrate Judge recommends denying summary judgment on the due process claim regarding prehearing disciplinary segregation because Defendants do not offer a specific argument in support of their qualified immunity defense. D.E. 93, p. 40. Defendants object that the M&R incorrectly places the burden on them to show that the law is not clearly established for this claim, and that, based on the events leading to the disciplinary hearing, Plaintiff's prehearing detention would not be unconstitutional. D.E. 97, p. 6.

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).

Plaintiff has made a due process claim for the time he spent in disciplinary segregation from August 23-26 before his disciplinary hearing on August 25. D.E. 44, p. 10. "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. However, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 537. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment . . . ." *Id.* at 540. The question is whether Plaintiff's prehearing segregation was an action meant to further a legitimate governmental purpose, or whether it amounted to punishment. *See Martinez v. Harris Cnty. Jail*, 71 F.3d 876 (5th Cir. 1995) ("If no legitimate governmental purpose for the action can be ascertained, then we may infer an intent to punish.").

Sergeant Dugger's affidavit states that on August 23, 2022, officers attempted to move Plaintiff to another cell. D.E. 77-7, p. 1. This move resulted in an altercation, requiring officers to administer OC spray and then physically gain control of Plaintiff and escort him out of his cell. *Id.* at p. 2. This altercation led to the disciplinary hearing held on August 25, 2022. D.E. 77-3, p. 2. The reason behind the officers' attempt to get Plaintiff out of his cell initially is not clear to the Court. Deputy Chief Chapa's declaration suggests that the August 23, 2022 move was initiated because there had been a dispute between Plaintiff and the officers regarding the removal of Plaintiff's mattress. *Id.* Defendants state that after removing Plaintiff's mattress, he "became noncompliant and verbally and physically combative with the correction officers." D.E. 77-3, p. 2. Additionally, Plaintiff began to cause a disturbance as he demanded

that officers bring back his second mattress. *See* D.E. 77-5, p. 3. Plaintiff was then placed into segregation (the reports refer to placing him in cell "A-8") due to his failure to follow orders and for conduct which disrupts the safety and security of the facility. *Id*. at p. 5.

Plaintiff contends that his prehearing segregation was a form of punishment because Sheriff Mills told him it was "his [the Sheriff's] jail," and Sheriff Mills and Chapa stated that "[they] make the rules." D.E. 46, p. 7. The reason behind Plaintiff's prehearing segregation is a genuine issue of material fact that cannot be resolved on summary judgment. Defendants' objection is **OVERRULED**.

### F. Disciplinary Hearing Due Process Claim

The Magistrate Judge recommends denying summary judgment on Plaintiff's due process claim regarding the disciplinary hearing. D.E. 93, p. 40. The M&R notes that while there was a hearing notice that stated Plaintiff had a right to call witnesses and present documentary evidence, nothing in the summary judgment evidence demonstrates that Plaintiff was actually afforded that opportunity. *Id.* at p. 41.

Defendants again object that the M&R incorrectly places the burden on them to establish that the law in this regard is not clearly established. They argue they are entitled to qualified immunity. D.E. 97, p. 6. They also state that though there is no audio of the hearing, "notice of the hearing was provided and a hearing was conducted and, as such, due process was afforded to Plaintiff." *Id.* at pp. 6-7.

Plaintiff has alleged a violation of his Fourteenth Amendment right to due process based on a lack of an adequate hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)

("Prisoners may also claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law."). It is clearly established law that pretrial detainees have the same due process protections as convicted prisoners at a disciplinary hearing. *See Frank v. Larpenter*, 234 F.3d 706 (5th Cir. 2000) ("The best approach is to treat pretrial detainees and convicted inmates equally at disciplinary hearings."). The elements of due process in a disciplinary hearing are: "(1) advance notice of claimed violation, (2) a written statement of the fact finders as to the evidence relied upon and a reason for disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence." *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (citing *Smith v. Rabalais,* 659 F.2d 539, 542 (1981)).

As Deputy Chief Chapa has stated in his affidavit, Plaintiff was provided with notice and a hearing, which is evident in the video recording of the hearing itself. However, Plaintiff has stated that he was not allowed to call witnesses or present evidence at the hearing, a violation of his clearly established due process right. D.E. 46, p. 8. Defendants do not address this point in any of their affidavits. Defendants' objection is **OVERRULED**.

### G. Retaliation: Transfer to Kleberg County Jail

The Magistrate Judge recommends denying summary judgment to Defendants on Plaintiff's retaliation claim for being transferred to the Kleberg County jail because there exists a question of fact as to the reason Plaintiff was transferred to another facility. DE. 93, pp. 43-44. Defendants object that the evidence "conclusively establishes" that the temporary transfer of Plaintiff to another facility was an attempt to restore order and security within the

Aransas County Detention Center. Thus, the transfer did not violate Plaintiff's constitutional rights. Additionally, the law is not clearly established that the transfer would violate Plaintiff's rights. DE. 97, p. 7.

"The law of this circuit is clearly established . . . that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts . . . ." *Woods*, 60 F.3d at 1164. A claim for retaliation requires that a plaintiff establish: (1) the exercise of a specific constitutional right, (2) a defendant's intent to retaliate for the exercise of the right, (3) a retaliatory act, and (4) causation. *Baughman*, 761 F. App'x at 382 (citing *McDonald*, 132 F.3d at 231). "A plaintiff must 'produce direct evidence of motivation' or 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.* (citing *Woods*, 60 F.3d at 1166).

Plaintiff exercised his constitutional right of access to the courts by filing the present lawsuit in December 2022. *See* D.E. 1. He was transferred to the Kleberg County jail on July 15, 2023, which he claims was in retaliation for filing the lawsuit. D.E. 46, p. 12. He claims he was placed in solitary confinement, drugged, and assaulted during his time at the Kleberg County jail. D.E. 44, p. 19. The transfer to a more dangerous prison can support the "retaliatory act" element of the retaliation claim. *See Parker v. Carpenter*, 978 F.2d 190, 192 (5th Cir. 1992) ("[pretrial detainee] has plead that his transfer to the violent inmate section was an act of punishment which is a legal claim cognizable under a § 1983 claim.").

There is a fact question regarding the reason for the transfer, precluding summary judgment. If the transfer was effectuated for retaliatory purposes, the law is clearly established on this point. Defendants' objection is **OVERRULED**.

## CONCLUSION

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's memorandum and recommendation, as well as Plaintiff's and Defendants' objections, and all other relevant documents in the record, and having made a de novo disposition of the portions of the Magistrate Judge's memorandum and recommendation to which objections were specifically directed, the Court **OVERRULES** Plaintiff's and Defendants' objections and **ADOPTS** as its own the findings and conclusions of the Magistrate Judge (D.E. 93). Specifically, the Court:

- **GRANTS** summary judgment in favor of Officer Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urrea on Plaintiff's excessive force claim;

- **GRANTS** summary judgment in favor of Officer Maddox, Sergeant Dugger, Officer Arisola, and Corporal Urrea on Plaintiff's denial of medical care claim;

- **GRANTS** summary judgment in favor of Deputy Chief Chapa on Plaintiff's solitary confinement retaliation claim arising from the June 2023 incident;

- **DENIES** summary judgment for Deputy Chief Chapa on Plaintiff's claim regarding the denial or confiscation of medical passes;

- **DENIES** summary judgment for Sheriff Mills and Deputy Chief Chapa on Plaintiff's claim regarding prehearing segregation arising from the August 2022 incident;

- **DENIES** summary judgment for Deputy Chief Chapa, Lieutenant Martinez, Corporal Tober, and Officer Alvarado on Plaintiff's due process claim for the August 2022 disciplinary hearing; and

- **DENIES** summary judgment for Sheriff Mills on Plaintiff's retaliation claim for the transfer to the Kleberg County jail.

**ORDERED** on July 18, 2025.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE